UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:17-CV-437-KKC

VIRGIL KELLY,                                                    PETITIONER,

V.                          **MAGISTRATE JUDGE'S**
                     **REPORT AND RECOMMENDATION**

AARON SMITH, *Warden*,                                          RESPONDENT.

*** *** *** ***

## I. INTRODUCTION

Virgil Kelly was found guilty of first-degree assault, first-degree sexual abuse, and of being a first-degree persistent felony offender in the Clark Circuit Court and sentenced to forty (40) years imprisonment. [R. 1]. In this action brought under 28 U.S.C. § 2254, Kelly challenges his conviction arguing fourteen individual claims of trial court error and constitutionally ineffective assistance of counsel. These claims have previously been presented to the state's highest courts for consideration and each time the courts did not grant the relief he sought. Likewise, this Court will recommend that his motion be denied.

## II. FACTS AND PROCEDURAL HISTORY

Following his conviction on the charge of wanton murder in the Clark Circuit Court, Kelly appealed to the Kentucky Supreme Court, which summarized the facts of this case as follows:

> This case arose out of an incident that occurred on the morning of April 11, 2003 at the Wabash Apartments in Winchester, Kentucky. Appellant, who resided at the apartment complex, entered the apartment of one of his neighbors, a woman we shall refer to as K.C., and attacked her.
>
> Appellant and K.C. were not strangers. The two had met approximately one week prior to the incident when K.C. spent the weekend with Irene Barry, a friend and co-worker of hers who also lived in Wabash Apartments. That weekend, Appellant and the two

women had spent a great deal of time together drinking beer and smoking crack cocaine. K.C. moved into the apartment building the following Thursday. That evening, K.C. invited Roger Combs, a man whom she had been seeing, to her apartment. Later that night, K.C., Combs, Barry, and Appellant spent several hours together drinking beer and smoking crack cocaine. At approximately 3:00 a.m. on Friday the group broke up, retiring to their individual apartments.

Combs, who had spent the night in K.C.'s apartment, awoke early the next morning and left the apartment complex because he was scheduled to be at work by 7:00 a.m. After Combs left the apartment, K.C. stayed awake to unpack boxes. K.C. and Barry were also scheduled to work that morning and had arranged for a ride to pick them up at 6:30 a.m. When their ride arrived, however, K.C. had decided that she was not going to work that day and Barry, who had overslept, told the driver to go on since she was not ready to go. Appellant, who was also awake, volunteered to drive Barry to work and he dropped her off there between 7:15 and 7:30 a.m. After dropping Barry off, Appellant returned to the apartment complex. From this point in the story, there are two very different accounts of what happened between K.C. and Appellant. In his statement to police, Appellant claimed that K.C. had invited him to come to her apartment after he dropped Barry at work. Appellant stated that when he arrived at K.C.'s apartment she invited him in and gave him a beer. He sat on the couch and K.C. sat down on a chair across the room from him. Appellant claims that K.C. was wearing only a bathrobe at the time, and that she engaged in sexually suggestive behavior, prompting him to move from the couch to K.C.'s bed. At this point, Appellant claims that K.C. "freaked out," jumped from her chair, and headed for the window next to her bed. Appellant further states that K.C. broke the window and jumped from it, landing on the concrete two stories below.

At trial, K.C. testified to a significantly different version of events. She stated that after Appellant dropped Barry at work he came to her apartment and asked for a beer. Appellant and K.C. were sitting in her apartment when Appellant exclaimed, "Show me your tits, and I'll tell you what Roger Combs said about you." After K.C. refused, Appellant left her apartment.

Sometime later, K.C. was bending over to unpack a box when Appellant grabbed her from behind. Appellant, who was holding a

knife, demanded that K.C. undress. She complied and asked him to put the knife away. After she was undressed, Appellant began swinging the knife, cutting K.C.'s hand. The cut was fairly deep and K.C. wrapped her hand in a pair of pajama pants to stop the bleeding. Appellant then directed K.C. to get on the bed and masturbate. After she began, Appellant, who was standing at the foot of her bed, exposed himself and also began to masturbate. Notably, there was no testimony indicating any physical sexual contact between K.C. and Appellant. K.C. then reached behind her head, pulled the window blinds from the wall, and threw them at Appellant. This prompted Appellant to lunge at K.C. with the knife, cutting her right leg and left arm. K.C. grabbed a coffee table, using it to shield her from Appellant's attacks. She then broke out the window and jumped to the parking lot below, breaking her leg in the fall.

In addition to K.C., several other witnesses also testified regarding the incident. James Tackett, the manager of the apartment complex, saw the victim immediately after she hit the ground and went to her aid. Tackett stated that he confronted Appellant and the two got in an altercation before Appellant headed toward the parking lot to get into his car. Tackett testified that he heard Appellant unsuccessfully trying to start his car, presumably in an attempt to flee. Dorothy Abshear, another resident of the apartment complex, testified that she heard the sound of breaking glass and went outside to see what was going on. At first, Abshear observed K.C.'s head protruding from the second-story window. K.C.'s head then went back inside the window, disappearing from view, before she reemerged and fell to the ground. Abshear stated that she had seen an African–American grab K.C. by the ankles and flip her out of the window. When Appellant emerged from K.C.'s apartment, he told Abshear that he had not done anything, that K.C. was crazy, and that she had jumped from the window.

Appellant was arrested and taken to the Winchester Police Department where he gave a lengthy, videotaped statement to police. Appellant claimed that he had not assaulted K.C. and reiterated that she had jumped from the window. During the interrogation, police informed Kelly that they had recovered a bloody knife from underneath the driver's seat of his car. DNA analysis later confirmed that the blood on the knife blade belonged to K.C. Consistent with her version of events, K.C.'s blood was also found inside the apartment, on her pajama bottoms and coffee table, and on Appellant's glasses and sweatpants.

Appellant was charged by the Clark County Grand Jury with first-degree assault, attempted rape, and being a first-degree persistent felony offender. Before the trial, Appellant exhibited some unusual behavior which prompted his attorney to request and receive funds for a psychological evaluation of Appellant. After Appellant refused to cooperate with the psychologist hired by his attorney, the trial court ordered Appellant to undergo a competency evaluation at KCPC. Although Appellant was eventually evaluated at KCPC, no hearing was ever held by the trial court to determine his competency to stand trial.

Prior to trial, Appellant moved the court to redact inadmissible portions of the statement he gave to police following his arrest. A hearing was held on the motion and the trial court ruled separately on each suggested redaction, approving some and rejecting others. At trial, the jury was shown a partially-redacted videotape of Appellant's statement—audio on the videotape had been muted for statements that had been ruled inadmissible. During the trial, Appellant's counsel moved for a directed verdict on the offense of attempted first-degree rape. The trial court granted Appellant's motion as to the rape charge, but indicated that it would instruct the jury on the charge of sexual abuse in the first degree.

At the close of the evidence, the jury was instructed on charges of first-degree assault and first-degree sexual abuse. Appellant was found guilty of both offenses. In a separate sentencing phase, he was also found guilty of being a first-degree PFO, thereby enhancing the period of incarceration for his crimes, and was sentenced to forty years in prison as recommended by the jury. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

[R. 1-1 at 2-6][1].

In his appeal, Kelly argued that the trial court erred: (1) by failing to hold a competency hearing despite having previously ordered a competency evaluation; (2) by denying Appellant's motion prior to trial to redact portions of a statement he gave to police; (3) by denying Appellant's motion for a mistrial after a witness testified that Appellant was incarcerated prior to trial; (4) by

---

[1] *Kelly v. Commonwealth*, No. 2004-SC-786-MR, 2006 WL 3386636, at *1-3 (Ky. November 22, 2006).

giving the jury an instruction on sexual abuse in the first degree despite the lack of any evidence that Appellant had sexual contact with his victim; (5) by convicting Appellant as a first-degree persistent felony offender even though the prosecution failed to prove that he was over eighteen years of age at the time his prior felonies were committed; (6) by deciding as a matter of law, rather than allowing the jury to decide whether a knife was "deadly weapon" or a "dangerous instrument"; and (7) by denying Appellant's motion for a directed verdict on the first-degree assault charge. [R. 1-1]. The Kentucky Supreme Court remanded his case on the claim that the court erred by failing to conduct a competency hearing and directed the Clark Circuit Court to hold a retrospective competency hearing to determine whether Kelly was competent to stand trial, in accordance with *Thompson v. Commonwealth*, 56 S.W.3d 406 (Ky. 2001)." [R. 1-1 at 4]. In all other respects, the trial court was affirmed. *Id*. at 12.

Kelly's retrospective competency hearing was conducted on July 17, 2008. [R. 11-14 at 2]. As a result of that proceeding, the court found him competent in an order filed July 18, 2008. *Id*. He subsequently appealed this determination to the Kentucky Supreme Court, which upheld the finding.

Kelly then filed a motion for post-conviction relief under RCr. 11.42, raising various claims of ineffective assistance of trial counsel. However, his motion was denied by the trial court without an evidentiary hearing on October 13, 2013. [R. 1-2 at 34]. That ruling was affirmed by the Kentucky Court of Appeals on April 15, 2016, and discretionary review was denied by the Kentucky Supreme Court on March 15, 2017. [R. 1-4].

On November 2, 2017, Kelly filed the instant action under 28 U.S.C. § 2254. [R. 1]. Here, he raises fourteen claims of ineffective assistance of counsel, all of which have been raised and addressed by Kentucky courts. The Commonwealth responded that it is entitled to summary

judgment because the state courts' rulings were not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court nor were the state court decisions based on an unreasonable determination of the facts in light of the evidence presented. Furthermore, the Commonwealth argues that no constitutional right owed to Kelly has been abridged or denied and thus he is otherwise in respondent's custody pursuant to the lawful orders of the Clark Circuit Court. [R. 11 at 1-2].

### III. STANDARD OF REVIEW

This case is governed by 28 U.S.C. § 2254(d), which states in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court adjudication is "contrary to" U.S. Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than the [Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court adjudication is an "unreasonable application" of Supreme Court precedent if the court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal habeas court may not grant relief simply by concluding that the relevant state court decision applied clearly established federal law erroneously or incorrectly; the "application must also be unreasonable." *Id*. at 411. An unreasonable application

of clearly established federal law occurs when the challenged state-court ruling rested on "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358, 133 S. Ct. 1781, 1787 (2013).

Federal courts do not analyze a petitioner's claims de novo under § 2254. Rather, a state court's factual determinations "are presumed correct absent clear and convincing evidence to the contrary." § 2254(e)(1). A state court decision, adjudicated on the merits and based on a factual determination, will not be overturned on factual grounds unless objectively unreasonable considering the evidence presented in the state-court proceeding. § 2254(d)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Section 2254(d) gives great deference to a state court's determinations and places a "new constraint on the power of a federal habeas court" to grant a state prisoner's habeas petition with respect to claims adjudicated on the merits at the state level. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). In *Williams*, the U.S. Supreme Court established that, when faced with a case governed by § 2254, a federal court should ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

Therefore, § 2254 creates a "highly deferential standard for evaluating state-court rulings," and demands that "state-court decisions be given the benefit of the doubt." *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011). Section 2254 has essentially erected a "formidable barrier" to federal habeas relief for those prisoners whose claims were fully adjudicated in state court, requiring they show that the state court's ruling "was so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (*quoting Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

# IV. ANALYSIS

## A.

Kelly raises fourteen (14) claims in his § 2254 petition [R. 1]. In his first seven (7) claims, he argues that his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process were violated when: (1) The trial court failed to hold a competency hearing following a court ordered evaluation for competency to stand trial; (2) the trial court denied his motion to redact portions of Kelly's statement to Detective Caudill; (3) the trial court denied his motion for a mistrial after Detective Caudill gratuitously informed the jury that Kelly had been incarcerated awaiting trial; (4) the trial court instructed the jury on sexual abuse in the first degree even though there was no evidence that Kelly had sexual contact with [the victim]; (5) the evidence was insufficient to convict Kelly as a persistent felony offender in the first degree because the prosecution never proved that he was over 18 years of age at the time his prior felonies were committed; (6) the trial court denied Kelly his right to a jury determination of every fact that increased the punishment for his crime when it decided as a matter of law that a knife was a deadly weapon or dangerous instrument; and (7) the trial court denied Kelly's motion for a directed verdict for the offense of assault in the first degree. Upon consideration of his arguments and based upon the record now before the Court, the undersigned will recommend that these seven (7) claims be denied.

## 1. Competency Evaluation and Hearing.

Kelly's first claim is that the trial court violated his constitutional rights when it failed to hold a timely competency hearing after ordering that a competency evaluation be conducted. [R. 1 at 6]. Kelly argues that he is now entitled to relief on this claim because KRS 504.100(3), prescribes a mandatory hearing requirement following a court-ordered competency evaluation

pursuant to KRS 504.100. [R. 1-1 at 7]. Specifically, KRS 504.100(3) states that "[a]fter the filing of a report (or reports), the court shall hold a hearing to determine whether or not the defendant is competent to stand trial." Although the Kentucky Supreme Court found error in the trial court failing to hold a competency hearing, the court remanded the action to the trial court where a retrospective competency hearing was conducted, and Kelly was found to be competent to stand trial.   Following this, Kelly appealed again to the Kentucky Supreme Court, but not based on the finding of competency, but rather based on procedural issues regarding the hearing itself. [R. 11-14 at 5]. Upon remand, for a competency hearing, it was more than eighteen months before a hearing was held and Kelly was found to be competent.  Kelly again appealed this finding and the Kentucky Supreme Court affirmed the trial court's decision on this appeal, addressing the timeliness of the hearing upon remand, Kelly's absence from a scheduling hearing prior to the retrospective competency hearing, and the permissibility of the competency hearing itself. [R. 11-14].

Kelly contends that *Thompson* v. Commonwealth, 56 S.W.3d 406 (Ky. 2001), mandates a retrospective competency hearing be held within 120 days [after remand], and the failure to do so entitles him to immediate release. [R. 11-14 at 2].

"The due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence that a defendant is incompetent." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006). "To be adjudged competent, a defendant must have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.'" *Id*. (*citing Dusky v. United States*, 362 U.S. 402 (1960) (per curiam)). The standard of review for a case where no competency hearing is held is: "whether a reasonable judge, situated as was the

trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983).

"A determination of competence is a factual finding, to which deference must be paid." *Filiaggi*, 445 F.3d at 858 (*citing Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995)). "The findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Filiaggi*, 455 F.3d at 858 (*citing Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001)). Furthermore, "the Sixth Circuit recognizes that a retrospective [competency] determination may satisfy the requirements of due process provided it is based on evidence related to observations made or knowledge possessed at the time of trial." *Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) (*citing Pate v. Smith*, 637 F.2d 1068 (6th Cir. 1981)).

Kelly has failed to show that his constitutional rights were infringed for lack of a competency hearing prior to trial, or within 120 days of remand. First, on remand a retrospective competency hearing was held on July 17, 2008, as ordered by the Supreme Court of Kentucky. [R. 11-14 at 2]. Retrospective competency hearings are permissible under federal law. *Cremeans*, 63 F.3d at 170; *See Moran v. Godinez*, 40 F.3d 1567 (9th Cir 1994) (holding that a post-conviction competency hearing held three years after trial cured the due process violation). The fact that a retrospective competency hearing is permissible under federal law, and that one was held on remand, shows that this claim has no merit.

Second, assuming for a moment that a retrospective competency hearing was not held, Kelly would have to show substantial evidence that he was incompetent for a competency hearing to be held. *Filiaggi*, 445 F.3d at 858. Kelly does not even come close to providing the requisite evidence that is necessary for a hearing. Prior to remanding the case to the Clark Circuit Court, the

Kentucky Supreme Court explained that the Commonwealth suggested that the trial court had no reason to question Kelly's competency. [R. 1-1 at 6][2]. Yet the trial court was reasonable in ordering Kelly to undergo an in-patient evaluation to address his competency to stand trial and his criminal responsibility, given Kelly's behavior in failing to cooperate with a private psychologist and given the recommendations of his trial counsel [R. 1-1 at 6; R. 11-1 at 1]. The evaluation and opinion of the doctor who evaluated him show that Kelly was competent. *Id*. This case is very similar to *Owens v. Sowders*, where an evidentiary hearing was not held because there was no evidence of incompetency, the defendant could aid in his defense, a competency evaluation reported that the defendant was competent to stand trial and aid in his defense, the defendant did not claim he was incompetent, and following the evaluation defense counsel no longer had doubts about the defendant's competency. *Owens v. Sowders*, 661 F.2d 584, 585-87 (6th Cir. 1981). Here, there is no substantial evidence of incompetency. Kelly filed several motions on his own behalf during trial and after evidencing his ability to aid in his defense. [R. 11-1 at 1; R. 1; R. 1-3 at 2]. The competency evaluation in this case found him to be competent and able to stand trial and cooperate with counsel. [R. 1-3 at 2]. Kelly does not claim that he was in fact incompetent, just that he did not get a competency hearing. Lastly, there is no proof from the record that defense counsel had any more contentions with Kelly's competency following the evaluation. Thus, Kelly has failed to provide the substantial evidence necessary to show that he was incompetent and to require the trial court to conduct a competency hearing. *Bordenkircher*, 696 F.2d at 467; *Owens*, 661 F.2d at 587.

Third, "the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Filiaggi*, 445 F.3d at 858 (*citing Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001)). After carefully reviewing the record and applicable law, it is clear that the Kentucky

---

[2] *Kelly v. Commonwealth*, No. 2004-SC-786-MR, 2006 WL 3386636, at *3 (Ky. November 22, 2006).

Supreme Court and Clark Circuit Court's findings that Kelly was competent during his trial, although the result of an analysis of Kentucky law rather than a constitutional due process claim, does not result in a judgment that is either contrary to or an unreasonable application of Supreme Court precedent clearly established at the time. *Filiaggi*, 455 F.3d at 858. The judgment does not unreasonably determine the facts in evidence, and Kelly has not rebutted the factual finding by clear and convincing evidence. *Id*. at 859; *See* 28 U.S.C. §§ 2254(d)(2), (e)(1). Accordingly, Kelly's claim that the trial court's failure to hold a competency hearing after the court ordered competency evaluation denied him his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process are without merit and should be dismissed.

## 2. Kelly's Statements to Detective Caudill.

Kelly next argues that the trial court violated his constitutional rights when the trial court failed to redact parts of his statement made to Detective Caudill at his interview, prior to showing the jury a videotape of his interrogation. [R. 1 at 6]. The Government argues that the statements which were admitted during the trial were permissible under Kentucky Law and the Kentucky Rules of Evidence, and as the state supreme court found no error habeas relief will not lie. [R. 11-1 at 11].

As explained by the Kentucky Supreme Court in its 2006 Decision, "[a]fter [Kelly's] arrest, [he] was interrogated by Winchester Police Investigators." [R. 1-1 at 8][3]. "During his interview with police, [Kelly] repeatedly denied attacking or threatening [the victim], but admitted, among other things, to being in the apartment at the time [the victim] fell from the window." *Id*. "Prior to trial, [Kelly] requested that portions of his interrogation be suppressed citing various provisions of

---

[3] *Kelly v. Commonwealth*, No. 2004-SC-786-MR, 2006 WL 3386636, at *4 (Ky. November 22, 2006).

the [Kentucky] Rules of Evidence." *Id*. "A hearing was held on the issue and the trial court agreed to strike numerous statements." *Id*. Kelly disagreed and included this claim in his appeal.

After reviewing the statements and arguments made by Kelly to the Police, the Kentucky Supreme Court in its 2006 decision "concluded that such comments constituted a legitimate and effective interrogation technique and 'that retaining such comments in the version of the interrogation recording played for the jury [was] necessary to provide a context for the answers given by the suspect.'" [R. 1-1 at 9] (*citing Lanham v. Commonwealth*, 171 S.W.3d 14, 27 (Ky. 2005)). The Court went on to explain that "even if [the court] were to conclude these statements were admitted in error, that error would certainly be harmless since [the victim] testified as to the substance of the allegation made during the interview prior to the jury being shown the videotape." [R. 1-1 at 9].

Furthermore, in Kelly's 2006 Appeal he "objected to three statements [made] by the interrogating officer which he characterizes as improper opinion evidence, specifically statements describing [the victim's] wounds as 'defensive wounds.'" [R. 1-1 at 9]. Regarding this objection, the Kentucky Supreme Court held, that if the trial court improperly allowed opinion evidence under Kentucky Rules of Evidence 701, the admission was certainly harmless. [R. 1-1 at 10]. "The Commonwealth's second witness presented expert opinion testimony that [the victim's] wounds were consistent with defensive wounds." *Id*. Therefore, [the Kentucky Supreme Court could] safely conclude that any statements made during [Kelly's] interrogation characterizing [the victim's] injuries as defensive wounds were harmless beyond a reasonable doubt. *Id*.

Thus, the Kentucky Supreme Court decided the issue regarding Kelly's statement to Detective Caudill under one prior Kentucky Supreme Court case, *Lanham v. Commonwealth*, and the Kentucky Rules of Evidence. As the Court's decision rests on state law grounds, that are

independent of any federal question and adequate to support the judgment, it should not be disturbed. *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (*citing Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Consequently, Kelly's Sixth and Fourteenth Amendment rights were not denied by the trial court as confirmed by the Kentucky Supreme Court.

### 3. Presumption of Innocence.

Kelly next argues that his constitutional rights were violated when the trial court denied his motion for a mistrial after Detective Caudill testified in front of the jury that Kelly was incarcerated when they met and while awaiting trial, implicating Kelly's right to be presumed innocent. [R. 1 at 6]. The Government argues that habeas relief is unwarranted on this claim, because based on the facts of Kelly's case the Kentucky Supreme Court could not conclude that the extraordinary remedy of a mistrial was necessary because any violation of his right to be presumed innocent was a de minimis violation of that right and any other prejudice was cured by the reasonable doubt and presumption of innocence jury instructions. [R. 11-1 at 12].

In the Kentucky Supreme Court's 2006 Opinion, the Court properly stated that "the principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." [R. 1-1 at 10][4] (*citing Taylor v. Kentucky*, 436 U.S. 478, 483 (1978)). The Court goes on to explain, that "while [the court] can never condone placing a defendant in the position of appearing 'guilty' during his own trial, such as forcing him to wear an orange prison jumpsuit

---

[4] *Kelly v. Commonwealth*, No. 2004-SC-786-MR, 2006 WL 3386636, at *6 (Ky. November 22, 2006).

or to appear in shackles before the jury, there is a position where the prejudicial effect is either de minimis or could become that through slight rehabilitation of the jury." [R. 1-1 at 11] (*citing Davis v. Commonwealth*, 899 S.W.2d 487, 490 (Ky. 1995)).

It is the obligation of the court to weigh allegations of error with the remedy sought for those errors. [R. 1-1 at 11]. A mistrial is an extreme and costly remedy which should only be used when "there is a fundamental defect in the proceedings which will result in a manifest injustice." *Shabazz v. Commonwealth*, 153 S.W.3d 806, 810-11 (Ky. 2005). A mistrial should be reserved for an error so great that it would deny the litigant a fair and impartial jury absent a new trial. *Shabazz*, 153 S.W.3d at 811. Kelly has clearly failed to meet this standard in this case. Detective Caudill's testimony should not have alluded to Kelly's current and prior incarceration. This was a violation of Kelly's right to be presumed innocent, but it was a very de minimis violation of that right. When such a violation has occurred a proper jury instruction can be a way to cure the violation. In this case, the lingering prejudicial effect from Detective Caudill's disclosure was cured by the jury instruction which specifically instructed the jury as to 'Reasonable Doubt' and the 'Presumption of Innocence.'" [R. 1-1 at 11].

In *Taylor*, the U.S. Supreme Court held "that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978). Furthermore, "it long has been recognized that an instruction on the presumption is one way of impressing upon the jury the importance of that right." *Id*. at 485. The key difference between this case and *Taylor*, is that the trial court here gave an instruction on reasonable doubt and the presumption of innocence. Moreover, *Taylor* was reversed because the prosecutor improperly referred to the defendant's

indictment, the evidence against the defendant was weak, and the trial court otherwise gave the jury skeletal instructions. *Kentucky v. Whorton*, 441 U.S. 786, 789 (1979) (*citing Taylor v. Kentucky*, 436 U.S. 478 (1978)). This all created "a genuine danger that the jury would convict petitioner on the basis of those extraneous considerations, rather than on the evidence introduced at trial." *Whorton, 441 U.S.* at 789. Again, there are no such extraneous considerations in this case. Additionally, "an instruction is constitutionally required only when, in light of the totality of the circumstances, there is a 'genuine danger' that the jury will convict based on something other than the State's lawful evidence, proved beyond a reasonable doubt." *Delo v. Lashley*, 507 U.S. 272, 278 (1993) (*citing Taylor v. Kentucky*, 436 U.S. 478, 488 (1978)).

Here, the Kentucky Supreme Court determined that any prejudicial effect had been overcome by the trial court instructing the jury as to reasonable doubt and the presumption of innocence. Accordingly, the Kentucky Supreme Court decision regarding Detective Caudill's testimony that suggested Kelly was incarcerated cannot be said to be "so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Nor was the decision contrary to, or an unreasonable application of, clearly established federal law. Thus, this claim should be denied.

### 4. First-Degree Sexual Abuse.

Kelly argues that the trial court improperly instructed the jury on first-degree sexual abuse, pursuant to KRS 510.110(1)(a), even though there was no evidence that he had sexual contact with the victim. [R. 1 at 6]. The Government argues that habeas relief is unwarranted as the claim is solely a question of the interpretation of state statute for which the state supreme court is the final arbiter. [R. 11-1 at 13]. The Kentucky Supreme Court also addressed this claim in its prior Opinion.

[R. 1-1 at 12][5]. The Court explains that KRS 510.110(1)(a) "requires proof of two distinct elements prior to a conviction for first-degree sexual abuse: (1) a defendant must subject another person to sexual contact, and (2) said contact must be achieved by forcible compulsion." [R. 1-1 at 12]. Kelly argues that there was inadequate evidence to prove the first element—that he subjected [the victim] to sexual contact because he never touched the victim. *Id*. at 12. "KRS 510.010(7) defines the term 'sexual contact' as any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party." [R. 1-1 at 12]. "The contact must be with either the victim or the actor but need not be contact between them." *Id*. at 13. (*citing Bills v. Commonwealth*, 851 S.W.2d 466, 471 (Ky. 1993)). The Court concluded that although "there was no physical contact between them, the facts as proven satisfy the definition of 'sexual contact' under the statute." [R. 1-1 at 13].

Thus, the Kentucky Supreme Court decided the issue regarding the trial court's instruction to the jury on first-degree sexual abuse under one prior Kentucky Supreme Court case, *Bills v. Commonwealth*, and KRS 510.110(1)(a). The Court's decision rests on state law grounds, that are independent of any federal question and adequate to support the judgment, and as such it should not be disturbed. *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (*citing Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Consequently, this claim should be denied.

---

[5] *Kelly v. Commonwealth*, No. 2004-SC-786-MR, 2006 WL 3386636, at *6-7 (Ky. November 22, 2006).

**5. Failure to Prove Elements of Persistent Felony Offender Charge.**

Kelly next argues that he should not have been convicted of being a first-degree persistent felony offender (PFO) when the Commonwealth failed to prove every element of the charge, particularly, that the prosecution never proved that he was over the age of eighteen at the time his prior felonies were committed. [R. 1 at 6]. The Government argues that this claim of error was unpreserved and procedurally defaulted in state court and a federal court may not review federal claims that were procedurally defaulted in state court— that is, claims that the state court denied based on an adequate and independent state procedural rule. [R. 11-1 at 13] (*citing Beard v. Kindler*, 558 U.S. 53, 55 (2009)).

In addressing this claim in its 2006 Opinion, the Kentucky Supreme Court noted, at the outset, that Kelly "has conceded that this issue was not properly preserved." [R. 1-1 at 14] [6]. "Thus, any alleged error is reviewed under [the Court's] palpable error rule, RCr 10.26." *Id*. The Court goes on to explain that it has previously "held that direct proof of a particular PFO element was not required if there was evidence from which a jury could infer the existence of that element." *Id*. at 15. (*citing Martin v. Commonwealth*, 13 S.W.3d 232 (Ky. 1999)). "Here there was testimony from [Kelly's] parole officer that [Kelly's] date of birth was April 23, 1951, which means he would have turned eighteen in 1969." [R. 1-1 at 15]. "After reviewing the documents that were filed in the record, it is clear that all of the conduct underlying [Kelly's] prior felony convictions had to have occurred after he turned eighteen." *Id*. The statute governing persistent felony offenders is KRS 532.080(3)(b), and it "merely requires the felony acts occurred after the defendant's eighteenth birthday." [R. 1-1 at 16]. "In light of this conclusion, [the Court] cannot say that the error in the Commonwealth's failure to prove the specific dates of [Kelly's] crimes caused a

---

[6] *Kelly v. Commonwealth*, No. 2004-SC-786-MR, 2006 WL 3386636, at *8 (Ky. November 22, 2006).

manifest injustice." *Id*. at 17. "As such, the error was not palpable error and reversal is not required." *Id*.

The Kentucky Supreme Court came to this decision under both the laws of the state and the procedural rules of the state. As the U.S. Supreme Court has held, "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review, as nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). Thus, absent showings of "cause" and "prejudice," federal habeas relief will be unavailable when (1) "a state court has declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," and (2) "the state judgment rests on independent and adequate state procedural grounds." *Walker v. Marti*n, 562 U.S. 307, 316 (2011) (*citing Wainwright v. Sykes*, 433 U.S. 72, 84 (1977); *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991)). It is clear, that the Court in the present case rendered its' decision under the palpable error rule, RCr 10.26, which Kelly was unable to overcome, and as an independent and adequate state procedural ground, makes federal habeas relief unavailable as to this claim.

### 6. Jury Instructions on First-Degree Assault Charge.

Kelly argues that he was denied his constitutional rights when the trial court erred by giving jury instructions that did not require the jury to decide each element of the charged crime, when the trial court decided as a matter of law that a knife was a deadly weapon or dangerous instrument. [R. 1-1 at 17][7]. The Government argues that the Kentucky Supreme Court's holding that the trial court's finding was at most harmless error is not contrary to clearly established federal law as determined by the Supreme Court. [R. 11-1 at 15] (*citing Chapman v. California*, 386 U.S. 18 (1967)). In the Kentucky Supreme Court's 2006 Opinion, the Court agreed with Kelly and

---

[7] *Kelly v. Commonwealth*, No. 2004-SC-786-MR, 2006 WL 3386636, at *9-10 (Ky. November 22, 2006).

determined that "the jury instructions in this case for the crime of first-degree assault were in error." [R. 1-1 at 19]. Determining whether a knife is a deadly weapon is an inquiry that requires an application of the law to fact, and according to the U.S. Supreme Court the jury should be entitled to decide all components of essential elements, including those that require the application of law to fact. *Id*. at 19. (*citing United States v. Gaudin*, 515 U.S. 506, 511-515 (1995)).

However, the Kentucky Supreme Court determined "that [the] error is subject to the harmless error rule, RCr 9.24." [R. 1-1 at 19] (*citing Thacker v. Commonwealth*, 194 S.W.3d 287, 291 (2006); *Neder v. United States,* 527 U.S. 1 (1999)). "The test for harmless error is whether there is any substantial possibility that the outcome of the case would have been different without the presence of that error." [R. 1-1 at 19]. The Court concluded, that "given the circumstances of this case, particularly the severity of [the victim's] injuries and the fact that the knife was found covered with traces of her blood, there can be little doubt that had the jury been presented with a proper jury instruction it would have concluded that the knife was a 'dangerous instrument' and convicted [Kelly] of first-degree assault." *Id*. at 20. Thus, "the error was harmless." *Id*.

As previously stated, Section 2254 imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), which effectively "demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. 19 at 24. A federal habeas court may not grant relief simply by concluding that the relevant state court decision applied clearly established federal law erroneously or incorrectly; the "application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). In this case, the Kentucky Supreme Court applied the correct law to the facts, and found that the jury instruction was incorrectly given, but that such an error is subject to the harmless error rule. Like in *Neder*, Kelly was tried before an impartial judge, under the correct standard of proof, with the assistance of counsel, and was

given the benefit of a fairly selected and impartial jury that was instructed to consider all the evidence. *Neder*, 527 U.S. at 9. The trial court may have failed to give the proper jury instructions regarding whether the knife was a deadly weapon or not, but that error did not render Kelly's trial "fundamentally unfair." *Id*. Nothing in the Court's decision points to any erroneous, incorrect, or unreasonable application of federal law. Therefore, the Court's decision will be given the benefit of the doubt and Kelly's claim should be denied.

### 7. Failure to Grant Directed Verdict on First-Degree Assault Charge.

Kelly's next argument is that the trial court violated his constitutional rights when it denied his motion for a directed verdict for the offense of assault in the first degree. [R. 1-1 at 20][8]. Kelly based this on a claim that the victim was incompetent to testify under Kentucky Rule of Evidence 601(b) because her testimony was "varying and unreliable." [R. 1-1 at 20]. The Government argues that the state supreme court found the victim to be competent under the state evidence rules, ruling that inconsistent statements go to the weight of the victim's testimony, but that even without the victim's testimony the evidence was enough to convict Kelly. [R. 11-1 at 16]. Furthermore, the Government argues that habeas relief then would not be warranted as the state test for sufficiency of evidence on appeal in *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983) is similar to the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979) for determination of the sufficiency of the evidence in habeas proceedings. [R. 11-1 at 16].

This is the same argument Kelly made in his 2006 appeal to the Kentucky Supreme Court, and he asserts that if the victim's testimony was properly excluded, no reasonable jury would convict him of first-degree assault. The Kentucky Supreme Court disagreed and stated that "the default rule of KRE 601(a) is that 'every person is competent to be a witness' unless the person

---

[8] *Kelly v. Commonwealth*, No. 2004-SC-786-MR, 2006 WL 3386636, at *11 (Ky. November 22, 2006).

falls within a specific exception found in KRE 601(b) or other rule." [R. 1-1 at 20]. KRE 601(b) states that "[a] person is disqualified to testify as a witness if the trial court determines that he: (1) lacked the capacity to perceive accurately the matters about which he proposes to testify; (2) lacks the capacity to recollect facts; (3) lacks the capacity to express himself so as to be understood, either directly or through an interpreter; or (4) lacks the capacity to understand the obligation of a witness to tell the truth." The Court held that the victim "was not the sort of witness contemplated by the rule." [R. 1-1 at 20]. In addition, the Court determined that even without the victim's testimony the evidence of a violent attack, the victim's blood at the scene and on Kelly's sweatpants and glasses, the knife recovered from Kelly's car with the victim's blood on it, the testimony of several witnesses implicating Kelly in the attack, and the fact that Kelly admitted to police that he was in the apartment before the victim fell to the parking lot below, was sufficient evidence for the jury to convict Kelly of first-degree assault. *Id.* at 21.

The U.S. Supreme Court has held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (*see Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018)). It is "not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007). Therefore, given the recitation of the facts in the Kentucky Supreme Court's Opinion,  a rational fact finder could have found Kelly guilty beyond a reasonable doubt with or without the victim's testimony. Accordingly, the

determination that the trial court did not err in denying Kelly's motion for a directed verdict on the charge of first-degree assault was not unreasonable, and as such this claim should be denied.

## B.

Kelly next asserts that due to ineffective assistance of counsel related to his retrospective competency hearing and subsequent appeal, his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process and equal protection of the law were violated.

Following the Kentucky Supreme Court's affirmation of the Clark Circuit Court's retrospective finding of competency, Kelly filed a pro se motion to vacate his sentence pursuant to RCr 11.42, alleging ineffective assistance of counsel. [R. 1-3][9]. The Clark Circuit Court denied all seven claims, that are discussed below individually, and Kelly appealed the denial of each claim to the Kentucky Court of Appeals. [R. 1-2; R. 1-3]. Ultimately, the Kentucky Court of Appeals affirmed the Circuit Court's denial. [R. 1-3 at 23]. According to the Kentucky Court of Appeals, "[i]n a motion brought under RCr 11.42, '[t]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction proceeding…A reviewing court must always defer to the determination of facts and witness credibility made by the circuit judge.'" [R. 1-3 at 4] (*citing Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006)). "An RCr 11.42 motion is 'limited to issues that were not and could not be raised on direct appeal.'" [R. 1-3 at 5]. "Pursuant to RCr 11.42(5), if there is 'a material issue of fact that cannot be determined on the face of the record the court shall grant a prompt hearing.'" [R. 1-3 at 5].

To succeed on an ineffective assistance claim, a petitioner must prove both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1994). First, to

---

[9] *Kelly v. Commonwealth*, No. 2014-CA-124-MR, 2016 WL 1558769, at *1 (Ky. App. April 15, 2016).

prove deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-89. In applying the test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance…." *Id*. And the defendant must rebut this presumption by proving, not merely alleging, that his attorney's representation was unreasonable under prevailing professional norms and that the challenged course of action was not sound strategy. *Id*. Second, Petitioner must establish prejudice by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceeding would have been different. *Id*. at 694-95. Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the conviction if the error did not affect the outcome. *Id*. at 691.  His claims, as raised before the Kentucky Courts and asserted in this action are addressed as follows:

(1) Counsel represented Kelly under conflict of interest and divided loyalties, so prejudicial in nature they denied Kelly his Sixth Amendment right to effectively mount a defense against the charges; (2) Counsel failed to fully explore and investigate facts, failed to obtain victim's psychiatric records, and failed to obtain a forensic expert psychiatrist to present testimony that victim's state of mind and injuries were a direct result of self-inflicted injuries suffered secondary to "cocaine-associated excited delirium;" (3) Counsel failed to investigate and obtain a forensic blood splatter specialist to present evidence to show that due to the nature of the victim's cuts, anyone in the vicinity would have  blood splatter on them; (4) Counsel failed to object or submit curative jury instructions, to preserve the issue of the trial court's deviation from the sentencing structure of KRS 532.080 and *Pace v. Commonwealth*, 636 S.W.2d 887 (Ky. 1982) requiring the imposition of sentence for the principal offense before "in lieu" of persistent felony offense enhancement; (5) Counsel failed to investigate witnesses to testify on Kelly's behalf as to

character, to refute the Commonwealth's characterization of Kelly as violent, and precluding introduction of perjurious testimony; (6) Counsel failed to move for disqualification of the Commonwealth Attorney's office when CA called ACA Heidi Engel to testify that Richie Bell committed perjury on May 21, 2004; and, (7) Each and together Ground 1-11 establish beyond a preponderance of the evidence that Kelly was denied stated Sixth Amendment rights and Fourteenth Amendment rights by counsels' actions and/or inactions in representing Kelly in this case sub judice, prejudice is shown on the conviction when such evidence establishes that had it not been for these errors, the outcome of the proceedings would have been different under Kelly's claims of factual and actual innocence.

### 1. Conflict of Interest.

Kelly's first claim under his RCr 11.42 motion, as well as this Section 2254, is that he received ineffective assistance of counsel due to defense counsel's conflict of interest prior to the suppression hearing and at all times during his trial, due to defense counsel's career change following his case. [R. 1-2 at 7; R. 1-3 at 5]. According to the Clark Circuit Court, Kelly "makes numerous accusations and criticizes various aspects of defense counsel's performance in order to demonstrate that a conflict of interest exists which allegedly precluded an effective defense." [R. 1-2 at 7]. The Clark Circuit Court determined that Kelly's allegations in his RCr 11.42 Motion were "merely an attempt to litigate once again what has previously been brought to the court's attention and resolved during the pretrial stage of the case." [R. 1-2 at 8]. The court determined that these same criticisms and complaints had been addressed at the May 21, 2004, suppression hearing and at that hearing, in open court, the judge informed Kelly of his rights to proceed pro se and instead he decided he wanted defense counsel to continue representing him. *Id*. at 8-9. Kelly has also argued that his counsel was conflicted because defense counsel "changed employment

shortly after the trial and became an Assistant Commonwealth Attorney." *Id*. at 9. Thus, implying that "defense counsel maintained divided loyalties while representing the defendant during the case because she switched from defense counsel to prosecutor shortly after the conclusion of this trial." *Id*. The Circuit Court found that this allegation failed to satisfy RCr 11.42(2), in that the defendant failed to state any specific facts or details to support his claim. *Id*. at 10. Upon review of the record, the Kentucky Court of Appeals agreed completely with the Circuit Court. *Id*.

Here, the record is clear that Kelly's defense counsel performance was in no way deficient and no factual basis has been provided to support a different conclusion. No other proof, other than defense counsel subsequently became a prosecutor, has been provided to support Kelly's accusations of ineffective assistance of counsel. "The [federal court's] role on habeas review is not to nitpick gratuitously counsel's performance. After all, the constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell,* 348 F.3d 177, 206 (6th Cir. 2003) (*citing Strickland,* 466 U.S. at 684). Finding that the presumption of reasonable performance has not been overcome, the Kentucky Court of Appeals' decision on this issue was not contrary to or an unreasonable application of federal law. Therefore, this claim of ineffective assistance relating to defense counsel's alleged conflict of interest should be dismissed.

**2. Victim's State of Mind.**

Kelly's second argument is that his counsel was ineffective for "failing to obtain the victim's psychiatric records and a forensic psychiatrist to present testimony that the victim's injuries were self-inflicted as a direct result of a state of mind and condition known as "cocaine associated excited delirium." [R. 1-2 at 11; R. 1-3 at 9]. Kelly has always maintained that he never touched the victim; that the victim's injuries were entirely self-inflicted and a direct result of her voluntarily jumping out of the window after going berserk or crazy. [R. 1-2 at 12]. "Now, under

his RCr 11.42 claim, [Kelly] proposes an underlying cause for the victim's alleged behavior…a medical condition or state of mind known as 'cocaine associated excited delirium' from which the victim allegedly suffered." *Id*. Kelly contends that had defense counsel explored this theory and the victim's mental history and obtained a forensic expert to testify regarding the excited delirium, his version of events would have been verified and the results of the case would have been different. *Id*. Thus, Kelly's argument is that his counsel was ineffective for not asserting this defense as a part of the trial strategy.

As the Clark Circuit Court and the Kentucky Court of Appeals found, Kelly has failed to provide any factual grounds to support this theory. "In a motion brought under RCr 11.42, 'the movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by a post-conviction proceeding…. A reviewing court must always defer to the determination of facts and witness credibility made by the circuit judge." *Skaggs v. Commonwealth*, 488 S.W.3d 10, 14 (Ky. App. 2016) (*citing Simmons v. Commonwealth,* 191 S.W.3d 557, 561 (Ky. 2006)). The stated purpose of RCr 11.42 "is to provide a forum for known grievances, not to provide an opportunity to research for grievances." *Gilliam v. Commonwealth*, 652 S.W.2d 856, 858 (Ky. 1983); *Woodall v. Commonwealth*, No. 2003-SC-475-MR, 2005 WL 3131603, *1 (Ky. 2005). The state trial court and appellate court found that "'cocaine associated excited delirium' is a theory that appears to be unproven, notwithstanding [Kelly's] views to the contrary." [R. 1-2 at 17]. Specifically, that Kelly's lack of evidence or proof to support his theory is problematic. *Id*. The only proof he provides is his allegation that it is true. *Id*. Therefore, the inquiry here on habeas review in determining ineffective assistance of counsel is whether counsel's performance fell below reasonably effective assistance under prevailing professional norms. *Strickland*, 466 U.S. at 687-88.

There are no specific set of detailed rules that outline how best to represent a criminal defendant. *Id*. at 689. If such rules did exist it "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id*. The purpose of the effective assistance guarantee of the Sixth Amendment is simply to ensure that criminal defendants receive a fair trial. *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (*citing Michel v. Louisiana*, 350 U.S. 91, 100 (1955)).

Given the record, Kelly cannot overcome the presumption that his trial counsel's performance fell within the required range of reasonable professional assistance. First, Kelly's claims are speculative, because there is no proof asserted here or in the past that his theory of "cocaine associated excited delirium" exists or that it is a recognized mental or physical condition on which his allegations of self-inflicted harm can be based. [R. 1-2 at 15-16] Second, the experts which Kelly would have testify have never evaluated the victim and have no personal knowledge of the victim's actions on the day in question, so they could not and cannot testify as to her state of mind. [R. 1-2 at 16]; KRE 602.

Furthermore, by applying the standard found in *Strickland*, the Kentucky Court of Appeals found that "even if the [it] were to assume for the sake of argument that counsel acted deficiently in failing to investigate facts that the victim's state of mind and injuries may have been the result of self-inflicted injuries she suffered during 'cocaine associated excited delirium,' [it] cannot say that Kelly's defense was prejudiced by this failure. [R. 1-3 at 11] (*see Strickland v. Washington*,

466 U.S. 668 (1984)). The Court based this decision on the fact that "[a] bloody knife covered in the victim's blood was found underneath the driver's seat of Kelly's car; the victim's blood was found on Kelly's glasses and sweatpants; and the victim testified that Kelly had committed the crimes against her. [R. 1-3 at 11]. "In other words, the other evidence against Kelly [is] significant. *Id*. at 12. Furthermore, a presumption of correctness also applies to the factual findings of a state appellate court made on its review of the state trial record. *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

Here, the Kentucky Court of Appeals' finding that Kelly was not prejudiced by his counsel's failure to investigate the victim's state of mind is not contrary to or an unreasonable application of federal law and therefore this ground for relief is without merit.

### 3. Blood Spatter Specialist.

Next, Kelly argues that defense counsel was ineffective for failing to obtain a blood spatter specialist to testify at trial. [R. 1-2 at 19; R. 1-3 at 12]. Kelly contends that by having such a specialist testify at trial would allow him to show that the minimal amount of blood found on him, as compared to the scene, would prove that he was not the assailant. *Id*. Rather, the true assailant would have been covered in blood, given the massive amount of blood found at the scene. *Id*. The Government argues, and the record confirms, that the issue of blood spatter had been addressed at trial. [R. 11-1 at 19; R. 1-2 at 19-21; R. 1-3 at 12-5]. The Clark Circuit Court notes, and the Kentucky Court of Appeals affirms, that "[t]his defense theory was heard and considered by the jury without any need to call a blood spatter specialist to testify. The defendant did not suffer any prejudice by not having an expert testify as to blood spatter. The proposed testimony that the defendant asserts should have been given by a blood spatter specialist is the same information that came out during the jury trial." [R. 1-3 at 14]. "The jury heard the defense's argument about the

small amount of blood on Kelly's clothes and that, based upon the large amount of blood at the crime scene, 'whoever did this should have been covered in blood.'" *Id.* Thus, calling a blood spatter specialist would have done very little to influence the outcome of the case. Moreover, Kelly fails to comply with the requirements of RCr 11.42, in that he did not assert specific, known facts which justify relief. [R. 1-3 at 14].

Moreover, even if the court were to assume, arguendo, that defense counsel performed deficiently in failing to call a blood spatter expert, this still could not prejudice Kelly's defense. *Id.* (*see Strickland*, 466 U.S. 668 (1984)). This is because the jury heard the defense's argument about the small amount of blood and, as previously noted, a bloody knife covered in the victim's blood was found underneath the driver's seat of Kelly's car, and the victim testified that Kelly had committed the crimes against her. *Id.* at 15.

As such, this claim fails under the *Strickland* standard and is not contrary to or an unreasonable application of federal law, as Kelly cannot show that he received ineffective assistance of counsel, because the testimony of a blood spatter specialist would do little if anything to change the outcome.

### 4. Jury Instructions.

Kelly next argues "that defense counsel rendered ineffective assistance when counsel failed to contemporaneously object to jury instructions and failed to submit curing jury instructions, which would have preserved the jury instruction claim for direct appeal." [R. 1-2 at 27-9; R. 1-3 at 15-20]. Kelly first contends that that the circuit court should have fixed a term of years on the first-degree assault conviction before proceeding on to imposing an enhancement of that sentence due to the persistent felony offense–1st conviction. [R. 1-3 at 15]. This claim, as the Kentucky Court of Appeals explains, could have and should have been brought on direct appeal. *Id.* (*see*

*Hodge v. Commonwealth,* 116 S.W.3d 463, 473 (Ky. 2003)). Therefore, it is not properly before the court in the present motion. [R. 1-3 at 15] (*citing Simmons*, 191 S.W.3d at 561, *overruled on other grounds by Leonard*, 279 S.W.3d at 159). As discussed before, claims not properly presented and exhausted in state court are barred from consideration by this Court on habeas review, absent a showing of cause and prejudice or a miscarriage of justice. *Hodge v. Haeberlin*, No. 04-cv-185-KKC, 2006 WL 1895526, *9 (E.D. Ky. July 10, 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977)). As Kelly has presented no evidence on this matter it is barred from consideration.

Furthermore, Kelly cannot prove that he was prejudiced by counsel's failure to object to the jury instructions. To be prejudiced, Kelly must prove that the outcome would otherwise be different. *Strickland*, 466 U.S. at 691. "The rule is that if the jury finds the defendant guilty of the principal offense and of the previous convictions, only the penalty prescribed by the habitual-criminal statute shall be imposed and not the penalty for the principal offense…." *Pave v. Commonwealth,* 636 S.W.2d 887, 890-91 (Ky. 1982) (*citing Covington v. Commonwealth*, 481 S.W.2d 62, 64 (Ky. 1972)). Kelly was ultimately sentenced to twenty-five (25) years of imprisonment for the first-degree assault/PFO–1st conviction, a Class B Felony, and fifteen (15) years of imprisonment for the first-degree sexual abuse/PFO–1st conviction, a Class D Felony. [R. 1-3 at 19]; KRS 508.010(2); KRS 510.110(2). In pertinent part, KRS 532.080(6) applies in Kelly's situation, and it reads:

A person who is found to be a persistent felony offender in the first degree shall be sentenced to imprisonment as follows:

> (a) If the offense for which he presently stands convicted is a Class A or Class B felony, or if the person was previously convicted of one (1) or more sex crimes committed against a minor as defined in KRS 17.500 and presently stands convicted of a subsequent sex crime, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than twenty (20) years nor more than fifty (50) years, or life

imprisonment, or life imprisonment without parole for twenty-five (25) years for a sex crime committed against a minor;

(b) If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years.

KRS 532.080(6).

Therefore, as Kelly was sentenced to twenty-five years of imprisonment for a Class B felony, a crime for which the sentencing range was twenty (20) to fifty (50) years, and fifteen (15) years of imprisonment for a Class D felony, which prescribed a range of ten (10) to twenty (20) years, he cannot claim that he was not sentenced within the proper range of someone who was sentenced under the persistent felony offender statute. *Adkins v. Commonwealth*, 647 S.W.2d 502, 506 (Ky. 1982). Thus, Kelly cannot prove that he was prejudiced by counsel's failure to object because he was given an appropriate penalty within the prescribed limits of the habitual-criminal statute (here the PFO statute, KRS 532.080(6)), as required by *Pace*, and his punishment for his Class B and D felonies were replaced accordingly. Based on this analysis, Kelly's claim that defense counsel failed to object or submit appropriate jury instructions, as to the sentencing structure, is without merit and should be denied.

### 5. Character Witnesses.

Kelly next argues that his counsel was ineffective because counsel failed to investigate named witnesses to testify on his behalf as to his good character. [R. 1-2 at 29; R. 1-3 at 7]. Specifically, that Leslie Kelly and Terry Hall, two of Kelly's former parole officers, Paula Simmons, his live-in girlfriend, and various other witnesses should have been called by defense counsel as character witnesses to testify that the defendant was not a violent person. [R. 1-3 at 8]. The circuit court determined that the decision not to call the witnesses to testify was reasonable

trial strategy of defense counsel. *Id*. If defense counsel had called the witnesses, under the Kentucky Rules of Evidence, it could have "opened the door" for the Commonwealth on cross examination to bring in otherwise inadmissible evidence of prior bad acts. *Id*. However, the Kentucky Court of Appeals found this determination to be speculative. *Id*. at 9. Nonetheless, by applying the standard found in *Strickland*, the Kentucky Court of Appeals found that "even if the they were to assume that counsel performed deficiently by failing to present this evidence at trial, the result of the trial still would not have been different." [R. 1-3 at 9] (*see Strickland v. Washington*, 466 U.S. 668 (1984)). The Court based this decision on the fact that "[a] bloody knife covered in the victim's blood was found underneath the driver's seat of Kelly's car; the victim's blood was found on Kelly's glasses and sweatpants; and the victim testified that Kelly had committed the crimes against her. [R. 1-3 at 9]. Furthermore, a presumption of correctness also applies to the factual findings of a state appellate court made on its review of the state trial record. *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

Therefore, as the facts here are presumed to be correct and Kelly has failed to overcome that presumption, this Court agrees that whether the witnesses had testified would not have changed the outcome of this case. This finding is not contrary to or an unreasonable application of federal law and therefore this ground for relief is without merit.

### 6. Failure to Move for Disqualification of Commonwealth Attorney's Office.

Kelly next argues "defense counsel was ineffective for failing to move for disqualification of the Commonwealth Attorney's Office when the Commonwealth called Assistant Commonwealth Attorney (ACA) Heidi Engel to testify at the Suppression Hearing." [R. 1-2 at 31; R. 1-3 at 20]. Kelly's assertion is that a conflict of interest was created when the Commonwealth Attorney's Office called a Commonwealth Attorney to testify at the suppression hearing, and this

would require disqualification of the entire Commonwealth Attorney's Office. As discussed above, a suppression hearing was held by the trial court on May 21, 2004, to address the interview between Kelly and Detective Caudill after his arrest. Along with the issue of suppressing portions of Kelly's answers and comments made by Detective Caudill during the interview, testimony was also taken regarding factual allegations of what occurred at the Wabash Apartments in Winchester, Kentucky, on April 11, 2003. At the suppression hearing Kelly's defense counsel called Richie Bell to testify to what he saw and heard at the scene. [R. 1-2 at 31-32]. The prosecution called Heidi Engel, an Assistant Commonwealth Attorney, as a rebuttal witness. *Id*. Heidi Engel testified that what Richie Bell's testimony was directly contrary to what he previously told the Commonwealth Attorney's Office and the investigators. *Id*. Detective Caudill was also called as a witness and testified to the same rebuttal evidence as Heidi Engel. *Id*.

Kelly contends that when the Commonwealth Attorney called one of their own ACA Heidi Engel to rebut and impeach Richie Bell's testimony, it created a conflict that would require the disqualification of the Commonwealth Attorney's Office, and his defense counsel should have moved for this disqualification. [R. 1-3 at 21]. Now under this 28 U.S.C. § 2254 claim, the Government argues that Kelly failed "to allege and indeed cannot show any actual prejudice warranting disqualification of the Commonwealth's Attorney much less prejudice from counsel's failure to move thereon." [R. 11-1 at 20].

KRS 15.733 sets out the rules for disqualification of a prosecuting attorney in Kentucky. Particularly subsection (2) and (3), which reads:

> (2) Any prosecuting attorney shall disqualify himself in any proceeding in which he or his spouse, or a member of his immediate family either individually or as a fiduciary:
>
>> (a) Is a party to the proceeding, or an officer, director, or trustee of a party;

(b) Is acting as a lawyer in the proceeding;

(c) Is known by the prosecuting attorney to have an interest that could be substantially affected by the outcome of the proceeding;

(d) Is to the prosecuting attorney's knowledge likely to be a material witness in the proceeding;

(e) Has served in private practice or government service, other than as a prosecuting attorney, as a lawyer or rendered a legal opinion in the matter in controversy;

(f) Has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

(3) Any prosecuting attorney may be disqualified by the court in which the proceeding is presently pending, upon a showing of actual prejudice.

KRS 15.733(2)-(3).

Furthermore, the Kentucky Rule of Professional Conduct 3.7(a) states; "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue…." Ky. Sup. Ct. R. 3.130-3.7.

As the Kentucky Court of Appeals held, "[e]ven if…defense counsel performed deficiently in failing to move for disqualification of the Commonwealth Attorney's office…, Kelly still cannot show that he was prejudiced as a result of this alleged error. [R. 1-3 at 21]. The Court came to this conclusion on the fact that Assistant Commonwealth Attorney Heidi Engel only testified to refute Richie Bell's testimony "that he never told Detective Caudill or any other police officer that he saw Kelly go to or around his vehicle at the time of the events in question." *Id*. at 22.  Not only did Heidi Engel rebut this testimony, but so did Detective Caudill who "attested that Bell had told him and others that at the time of the events in question, he heard Kelly's car trying to start and leave." *Id*.

Regardless, of whether this claim is decided under a claim of adequate and independent state law ground based on the Kentucky Rules of Professional Conduct and the Kentucky Revised Statues, or whether it is based on a failure to comport with the standard found in *Strickland*, both requires a showing of prejudice. Prejudice under either scenario cannot be reached, because both Detective Caudill and Heidi Engel testified to the same content; "[a] bloody knife covered in the victim's blood was found underneath the driver's seat of Kelly's car; the victim's blood was found on Kelly's glasses and sweatpants; and the victim testified that Kelly had committed the crimes against her. [R. 1-3 at 21]. All of which refutes a finding that the outcome would have been different. (*see Strickland v. Washington*, 466 U.S. 668 (1984)). Thus, this claim lacks merit.

### 7. Cumulative Effect of Errors.

Kelly's final argument is that defense counsel rendered ineffective assistance of counsel based upon the cumulative effect of each of the alleged errors asserted in the previous arguments. [R. 1-2 at 32; R. 1-3 at 23]. There has not been a finding of any error in defense counsel's performance. Thus, "the accumulation of non-errors cannot collectively amount to a violation of due process." *Bedford v. Webb*, No. 2005-82-KKC, 2007 WL 3396498, *6 (E.D. Ky. Nov. 13, 2007) (*citing Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004)). Because, Kelly has "not shown that any of the alleged instances of ineffective assistance of counsel deprived him 'of a fair trial, a trial whose result is reliable[,]' he cannot show that the accumulation of these non-errors warrant relief. *Id*. (*citing Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

### V. MOTION FOR EXPANSION OF THE RECORD

Kelly has also filed a Motion to Expand the Record, [R. 21]. A Motion to Expand the Record is governed by Rule 7 of the Rules Governing Section 2254 Proceedings. This rule provides that "if the petition is not dismissed, the judge may direct the parties to expand the record by

submitting additional materials relating to the petition." Rule 7(a). As the analysis shows above, it will be the recommendation of the undersigned to deny Kelly's Writ of Habeas Corpus, [R. 1], thus his motion to expand should be denied as moot. Nevertheless, the Court will briefly address Kelly's requests. Kelly requests that this Court take judicial notice of certain alleged facts and deem certain documents filed into the Record; in the alternative, Kelly seeks an evidentiary hearing and the appointment of counsel. Kelly also seeks an extension of time to file his reply. *Id.* at 3.

### A. Whether Expansion of the Record is Required.

Rule 7(b) of the Rules Governing Section 2254 Proceedings provides that the court "may direct the parties to expand the record by submitting additional materials relating to the petition." These materials, however, may require authentication. *Id.* Documents such as those submitted by Petitioner may be considered as exhibits to the record of the 28 U.S.C. § 2254 proceeding, although the party opposing the submission of the additional materials must be given an opportunity to respond to the submission of the documents sought to be exhibited. Rule 7(b), (c). Ultimately, however, the determination of whether the record of a 2254 proceeding should be expanded falls within the discretion of the court. *Levine v. Torvik*, 986 F.2d 1506, 1517 (6th Cir. 1993).

The document—a court record of an objection to the appointment of counsel— that Kelly seeks to have admitted submits allegations that his Department of Public Advocacy counsel was unconstitutionally conflicted, supposedly evidenced by an alleged sexual relationship with the prosecutor of Kelly's case and the fact that she became employed by the Commonwealth Attorney's Office shortly after his case. [R. 21-2]. The document, however, provides no factual evidence in support of Kelly's claims. Further, any evidence of Kelly's DPA counsel's alleged conflict is already provided at numerous places in the Record of the above-styled matter. [*See, e.g.*,

R. 1-2 at 11; R. 11-15 at 6–10; R. 11-17 at 5–7]. For that reason, there would be no benefit to Kelly if the document, [R. 21-2], were to be deemed filed.

In accord with the Rules Governing Section 2254 Proceedings, the undersigned has provided Kelly with an opportunity to submit an exhibit to his motion and provided Respondent an opportunity to respond to the relevancy of the document. [R. 21; R. 23]. It is clear, however, that the document sought to be admitted by Kelly is of questionable value, because his objection to the appointment of counsel based on a conflict have already been briefed in the existing Record of the above-styled case. [*See, e.g.*, R. 1-2 at 11; R. 11-15 at 6–10; R. 11-17 at 5–7]. As whether expansion is called for falls within the undersigned's discretion, *Levine v. Torvik*, 986 F.2d 1506, 1517 (6th Cir. 1993), and the court finds no reason to expand the Record, Kelly's Motion, [R. 21], shall be denied to the extent it seeks expansion of the Record. Likewise, as Kelly has provided no basis on which the undersigned should take judicial notice of any fact, the court shall also deny Kelly's request for the court to take judicial notice of any fact.

### B. Whether Counsel and an Evidentiary Hearing are Required.

As an alternative to deeming Kelly's document, [R. 21-2], filed and incorporated into the Record of this matter and taking judicial notice of alleged facts therein, Kelly seeks the undersigned to appoint him counsel and grant him an evidentiary hearing pursuant to Rule 8 of the Rules Governing 2254 Proceedings. Respondent does not directly oppose the appointment of counsel or the scheduling of an evidentiary hearing, requesting the court to "take whatever action it deems appropriate." [R. 23 at 3]. As with the prior issues, the undersigned is informed by the Rules Governing Section 2254 proceedings.

### 1. Kelly is Not Entitled to Counsel.

A prisoner challenging the legality of his conviction, either because of an alleged defect in the proceedings leading to his conviction or an error of law in the execution of his sentence, enjoys no general constitutional right to court-appointed counsel at Government expense. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (holding that states need not provide appointed counsel in post-conviction proceedings); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (no constitutional right to appointed counsel in § 2254 proceeding). Rule 8 of the Rules Governing Section 2254 Proceedings, however, requires appointment of counsel to a petitioner who qualifies under 18 U.S.C. § 3006A, when a court grants an evidentiary hearing. Specifically, § 3006A(a)(2) states that a court may provide representation to an individual seeking relief under 28 U.S.C. § 2254 when "the interests of justice so require."

Therefore, pursuant to 18 U.S.C. § 3006A, the appointment of counsel for an indigent in a 28 U.S.C. § 2254 proceeding is within the discretion of the court, unless "the denial of counsel results in fundamental unfairness impinging on due process rights." *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) (internal quotations and citations omitted). In exercising its discretion, a court should consider the legal and factual complexity of the case, the defendant's ability to investigate and present his claims, and any other relevant factors. *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994); *see also Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir. 1994). When a petitioner in a habeas corpus proceeding has a good understanding of the issues and the ability to forcefully and coherently present his contentions, no attorney is legally required. *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987).

Kelly has presented no evidence and made no claim that the factual and legal bases for his Petition are so complex as to inhibit his ability to make his claims. *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). Likewise, Kelly has produced no evidence that the denial of counsel will result in a fundamental unfairness impinging on his due process rights. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). It is clear from the pleadings that Kelly "has a good understanding of the issues and the ability to forcefully and coherently present his contentions," so "no attorney is legally required." *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987). For that reason, Kelly need not be appointed counsel in this matter.

**2. No Evidentiary Hearing is Required.**

28 U.S.C. § 2254(e)(1) provides that, in a proceeding instituted for a writ of habeas corpus by a state prisoner, a determination of a factual issue by a state court shall be presumed correct, absent clear and convincing evidence to the contrary. In such a case, an evidentiary hearing is uncalled for, because there is no factual question to resolve. *Riley v. Snyder*, 840 F. Supp. 1012, 1019 (D. Del. 1993), *vacated sub nom. on other grounds* 62 F.3d 86 (3rd. Cir. 1995). Similarly, if the petitioner has failed to develop the factual basis of a claim in state court proceedings—and that claim has not been procedurally defaulted—the court "shall not" hold an evidentiary hearing unless the claim (1) relies on a new, retroactive rule of constitutional law; or (2) relies on a factual predicate that could not have previously been discovered despite the exercise of due diligence; and (3) the facts underlying the claim "would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2); *see also Townsend v. Sain*, 372 U.S. 293 (1963), *overruled by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *recognized as effectively overruled by Williams v. Taylor*, 529 U.S. 420 (2000) ("In sum, the opening clause of

[28 U.S.C. § 2254(e)(2)] codifies *Keeney's* threshold standard of diligence, so that prisoners who would have had to satisfy *Keeney's* test for excusing the deficiency in the state-court record prior to AEDPA are now controlled by [28 U.S.C. § 2254(e)(2)].").

Here, it is apparent from the existing Record in this matter that Kelly's factual allegations of a conflict due to his Department of Public Advocacy counsel's later job change was established in the state court record. [*See, e.g.*, R. 1-2 at 11; R. 11-15 at 6–10; R. 11-17 at 5–7]. For that reason, no evidentiary hearing is required on the issue. *Riley v. Snyder*, 840 F. Supp. 1012, 1019 (D. Del. 1993). Likewise, to the extent Kelly failed to establish a factual basis for a conflict of interest due to a sexual relationship between his DPA counsel and the prosecutors of his case, he is similarly not entitled to an evidentiary hearing under 28 U.S.C. § 2254(e)(2). This Court is forbidden from holding an evidentiary hearing in that case, absent limited circumstances. "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall *not* hold an evidentiary hearing on the claim." *Id.* (emphasis added). The undersigned may only order an evidentiary hearing in the presence of a new, retroactive rule of constitutional law, or the presence of facts that could not have previously been discovered; *and* the facts establish that, but for a constitutional error, the petitioner would not have been found guilty. *Id.*

Kelly makes no claim that his claim rests on a new, retroactive rule of constitutional law. Likewise, his Motion, [R. 21], does not indicate that he previously exercised due diligence in exploring the claim of a sexual conflict. In fact, Kelly produces no new facts in support of his claim whatsoever; he merely produces allegations of a sexual conflict in the document he seeks to have admitted into the Record. [*See* R. 21 at 2 (Petitioner claims his DPA counsel "was sleeping with the Commonwealth Attorney")]. Further—even assuming the presence of a new rule of retroactive constitutional law, or that Petitioner exercised due diligence in attempting to uncover

a factual basis to allege a sexual conflict—Kelly has demonstrated no basis on which the undersigned could find that any allegation he propounds "would be sufficient to establish that *but for* constitutional error, no reasonable factfinder would have found [Kelly] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B) (emphasis added).

The decision to hold an evidentiary hearing under Rule 8 of the Rules Governing Section 2254 Proceedings is within the discretion of the court, subject to the provisions of 28 U.S.C. § 2254(e). *See Reese v. Fulcomer*, 946 F.2d 247 (3rd. Cir. 1991), *cert. denied* 503 U.S. 988 (1992). The state court record contains adequate factual evidence pertaining to Kelly's claim of unconstitutionally conflicted counsel, [R. 1-2 at 11; R. 11-15 at 6–10; R. 11-17 at 5–7], and Kelly otherwise neither claims nor establishes any ground entitling him to an evidentiary hearing under 28 U.S.C. § 2254(e). For that reason, at this time, Kelly shall not be permitted an evidentiary hearing on the matter of whether his counsel was unconstitutionally conflicted.

**C. Whether Extension of Time to File a Reply is Warranted.**

The ability of the undersigned to grant an extension of time to file a reply pursuant to an 18 U.S.C. § 2254 Petition is axiomatic. *See* Rules 10 and 12 of the Rule Governing Section 2254 Proceedings. Specifically, Rule 12 states that the Federal Rule of Civil Procedure…may be applied to a proceeding under these rules. *Id*. Therefore, Rule 6 of the Federal Rule of Civil Procedure applies in this situation. Rule 6 states in pertinent part that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires…." Fed. R. Civ. P. 6(b)(1)(A). Furthermore, the ability to Reply is not mandatory, Rule 5(e) of the Rule Governing Section 2254 Proceedings states: the petitioner may submit a reply to the respondent's answer or other pleading within a time fixed by the judge. Therefore, the

appropriate inquiry is whether Petitioner has shown good cause to be granted the requested extension. In this case good cause has not been shown.

On July 30, 2018, this Court Ordered Kelly to Reply addressing Respondent's Response, [R. 11], to the Petition for Writ of Habeas Corpus, [R. 1]. [R. 13]. Kelly had until February 20, 2018, to file his Reply. Then on February 13, 2018, Kelly requested an Extension of Time to File his Reply. [R. 15]. In this request Kelly states several reasons why this extension is necessary, specifically that he is incarcerated, access to the "legal office" is limited, and the lack of resources and access to a computer is inadequate. *Id*. Considering Kelly's situation, this Court granted his request on February 20, 2018. [R. 16]. Meaning, Kelly would have until March 12, 2018, to file a Reply addressing Respondent's Response, [R. 11]. *Id*. Then on March 12, 2018, instead of filing a Reply Kelly filed a Motion to Produce A Complete Docket Sheet For the State Court Proceedings and for an additional twenty-one (21) day extension of time to submit a Reply. [R. 17]. Taking the new motion into consideration, this Court ordered that any Response should be filed on or before March 26, 2018. [R. 18]. On March 26, 2018, the Respondent filed a Response addressing Kelly's motion. [R. 19]. Following this, the Court issued an Order denying Kelly's Motion for Production as the documents were produced in Respondent's Response. [R. 20]. Also, this Court granted Kelly until April 27, 2018, which is an additional 28 days to file a Reply to Respondent's Response, [R. 11]. *Id*. Then on April 16, 2018, Kelly filed a Motion to Expand the Record, as addressed above, and included in this request was the currently sought extension of time. [R. 21].

Kelly requests the Court to vacate its' Order dated March 30, 2018 granting Kelly until April 27, 2018 to file a reply, and instead set the time for Reply sometime after the Motion to Expand the Record is resolved. [R. 21]. After a subsequent Court Order, [R. 22], directing a Response to be filed, that Response being filed, [R. 23], and a Reply being filed by Kelly, [R. 24],

this matter stood fully briefed on May 8, 2018. Thus, since the February 20, 2018 deadline to file a Reply, till Kelly filed his Reply to the Response in Opposition to the Motion to Expand, seventy-seven days have passed. Forty-eight days of that time were direct grants of extension to Kelly to enable him to file a Reply to the Response, [R. 11].

Given the state of this case, the above analysis, and the conclusion below, the undersigned sees no reason why Kelly should be granted an extension of time to file a Reply. Kelly has been given ample time to overcome any lack of resources, as stated in his first request for an extension of time, [R. 15], and according to his last request, [R. 21 at 3], it appears that he would argue only that which was already addressed in the briefings to his last two motions. Therefore, an additional extension of time is unwarranted.

## V. MOTION FOR HEARING

Kelly has also requested, as part of his petition, an evidentiary hearing. [R. 1 at 14]. Given the completeness of the factual record and the lack of merit to Kelly's claims, any evidentiary hearing on the matter is unnecessary and unwarranted. Accordingly, his request for an evidentiary hearing should be denied.

## VI. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that Kelly's Motion to Expand the Record, [R. 21], is **DENIED**.

In addition, Kelly has failed to show that the state courts' rulings in this matter represent an unreasonable application of clearly established federal law, and his petition offers no other legitimate basis for relief. Accordingly, and being otherwise sufficiently advised, the undersigned **RECOMMENDS** that Kelly's Petition for Writ of Habeas Corpus, [R. 1], be **DENIED**.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

This the 13th day of November, 2018.



Signed By:

*Edward B. Atkins* ЄβΛ

United States Magistrate Judge