| VIRGIL KELLY, | CIVIL ACTION NO. 5:17-cv-437-KKC |
|---|---|
| Petitioner, | |
| V. | ORDER AND OPINION |
| AARON SMITH, | |
| Warden. | |

*** *** ***

Virgil Kelly has petitioned for habeas corpus relief pursuant to 28 U.S.C. § 2254. [DE 1.] Also pending before the Court are Kelly's motions for miscellaneous relief, including a motion for an evidentiary hearing, a motion for the appointment of counsel, and a motion to expand the record or in the alternative, for the Court to take judicial notice of certain facts. Consistent with local practice, the motions were referred to Magistrate Judge Edward B. Atkins. The matter is now before the Court on the Magistrate's Report and Recommendation ("R&R") [DE 26] and Kelly's objections. [DE 30.] Having conducted a *de novo* review of the portions of the R&R to which Kelly objects, the Court will **adopt** the Magistrate's recommended disposition [DE 26] and **overrule** Kelly's objections. Accordingly, Kelly's petition for § 2254 relief [DE 1] is **denied**, as are his requests for an evidentiary hearing, appointed counsel, an expansion of the record, and the taking of judicial notice. Further, the Court **REFUSES** to issue a certificate of appealability.

## BACKGROUND

The Kentucky Supreme Court summarized the facts of this case in the following manner:

This case arose out of an incident that occurred on the morning of April 11, 2003 at the Wabash Apartments in Winchester, Kentucky. Appellant [Virgil Kelly], who resided at the apartment complex, entered the apartment of one of his neighbors, a woman we shall refer to as K.C., and attacked her.

Appellant and K.C. were not strangers. The two had met approximately one week prior to the incident when K.C. spent the weekend with Irene Barry, a friend and co-worker of hers who also lived in Wabash Apartments. That weekend, Appellant and the two women had spent a great deal of time together drinking beer and smoking crack cocaine. K.C. moved into the apartment building the following Thursday. That evening, K.C. invited Roger Combs, a man whom she had been seeing, to her apartment. Later that night, K.C., Combs, Barry, and Appellant spent several hours together drinking beer and smoking crack cocaine. At approximately 3:00 a.m. on Friday the group broke up, retiring to their individual apartments.

Combs, who had spent the night in K.C.'s apartment, awoke early the next morning and left the apartment complex because he was scheduled to be at work by 7:00 a.m. After Combs left the apartment, K.C. stayed awake to unpack boxes. K.C. and Barry were also scheduled to work that morning and had arranged for a ride to pick them up at 6:30 a.m. When their ride arrived, however, K.C. had decided that she was not going to work that day and Barry, who had overslept, told the driver to go on since she was not ready to go. Appellant, who was also awake, volunteered to drive Barry to work and he dropped her off there between 7:15 and 7:30 a.m. After dropping Barry off, Appellant returned to the apartment complex. From this point in the story, there are two very different accounts of what happened between K.C. and Appellant. In his statement to police, Appellant claimed that K.C. had invited him to come to her apartment after he dropped Barry at work. Appellant stated that when he arrived at K.C.'s apartment she invited him in and gave him a beer. He sat on the couch and K.C. sat down on a chair across the room from him. Appellant claims that K.C. was wearing only a bathrobe at the time, and that she engaged in sexually suggestive behavior, prompting him to move from

the couch to K.C.'s bed. At this point, Appellant claims that K.C. "freaked out," jumped from her chair, and headed for the window next to her bed. Appellant further states that K.C. broke the window and jumped from it, landing on the concrete two stories below.

At trial, K.C. testified to a significantly different version of events. She stated that after Appellant dropped Barry at work he came to her apartment and asked for a beer. Appellant and K.C. were sitting in her apartment when Appellant exclaimed, "Show me your tits, and I'll tell you what Roger Combs said about you." After K.C. refused, Appellant left her apartment.

Sometime later, K.C. was bending over to unpack a box when Appellant grabbed her from behind. Appellant, who was holding a knife, demanded that K.C. undress. She complied and asked him to put the knife away. After she was undressed, Appellant began swinging the knife, cutting K.C.'s hand. The cut was fairly deep and K.C. wrapped her hand in a pair of pajama pants to stop the bleeding. Appellant then directed K.C. to get on the bed and masturbate. After she began, Appellant, who was standing at the foot of her bed, exposed himself and also began to masturbate. Notably, there was no testimony indicating any physical sexual contact between K.C. and Appellant. K.C. then reached behind her head, pulled the window blinds from the wall, and threw them at Appellant. This prompted Appellant to lunge at K.C. with the knife, cutting her right leg and left arm. K.C. grabbed a coffee table, using it to shield her from Appellant's attacks. She then broke out the window and jumped to the parking lot below, breaking her leg in the fall.

In addition to K.C., several other witnesses also testified regarding the incident. James Tackett, the manager of the apartment complex, saw the victim immediately after she hit the ground and went to her aid. Tackett stated that he confronted Appellant and the two got in an altercation before Appellant headed toward the parking lot to get into his car. Tackett testified that he heard Appellant unsuccessfully trying to start his car, presumably in an attempt to flee. Dorothy Abshear, another resident of the apartment complex,

testified that she heard the sound of breaking glass and went outside to see what was going on. At first, Abshear observed K.C.'s head protruding from the second-story window. K.C.'s head then went back inside the window, disappearing from view, before she reemerged and fell to the ground. Abshear stated that she had seen an African– American grab K.C. by the ankles and flip her out of the window. When Appellant emerged from K.C.'s apartment, he told Abshear that he had not done anything, that K.C. was crazy, and that she had jumped from the window.

Appellant was arrested and taken to the Winchester Police Department where he gave a lengthy, videotaped statement to police. Appellant claimed that he had not assaulted K.C. and reiterated that she had jumped from the window. During the interrogation, police informed Kelly that they had recovered a bloody knife from underneath the driver's seat of his car. DNA analysis later confirmed that the blood on the knife blade belonged to K.C. Consistent with her version of events, K.C.'s blood was also found inside the apartment, on her pajama bottoms and coffee table, and on Appellant's glasses and sweatpants.

Appellant was charged by the Clark County Grand Jury with first degree assault, attempted rape, and being a first-degree persistent felony offender. Before the trial, Appellant exhibited some unusual behavior which prompted his attorney to request and receive funds for a psychological evaluation of Appellant. After Appellant refused to cooperate with the psychologist hired by his attorney, the trial court ordered Appellant to undergo a competency evaluation at KCPC. Although Appellant was eventually evaluated at KCPC, no hearing was ever held by the trial court to determine his competency to stand trial.

Prior to trial, Appellant moved the court to redact inadmissible portions of the statement he gave to police following his arrest. A hearing was held on the motion and the trial court ruled separately on each suggested redaction, approving some and rejecting others. At trial, the jury was shown a partially-redacted videotape of Appellant's statement—audio on the videotape had been

muted for statements that had been ruled inadmissible. During the trial, Appellant's counsel moved for a directed verdict on the offense of attempted first-degree rape. The trial court granted Appellant's motion as to the rape charge, but indicated that it would instruct the jury on the charge of sexual abuse in the first degree.

At the close of the evidence, the jury was instructed on charges of first-degree assault and first-degree sexual abuse. Appellant was found guilty of both offenses. In a separate sentencing phase, he was also found guilty of being a first-degree PFO, thereby enhancing the period of incarceration for his crimes, and was sentenced to forty years in prison as recommended by the jury. He appeals to this Court as a matter of right. *Kelly v. Com.*, No. 2004-SC-000786-MR, 2006 WL 3386636, at *1-*3 (Ky. Nov. 22, 2006)

On appeal, Kelly asserted that the state trial court made a number of critical mistakes. Among these were: (1) the failure to conduct a competency hearing even though the court had previously ordered a competency evaluation; (2) the failure to redact certain portions of Kelly's post-arrest interview with Winchester Police; (3) the denial of Kelly's motion for a mistrial after a state witness testified that Kelly was incarcerated when the two had spoken; (4) the failure to give the jury the proper instruction regarding sexual abuse in the first degree; (5) the decision to sentence Kelly as a persistent felony offender despite the fact that the state failed to show that he was over eighteen when the previous crimes were committed; (6) the failure to let the jury decide a crucial element of the assault in the first degree charge—whether the knife was a "deadly weapon" or a "dangerous instrument"; and (7) the denial of Kelly's motion for a directed verdict on the first-degree assault charge.

Though affirming the judgment on all other grounds, the Kentucky Supreme Court determined that the state trial court erred by not conducting a competency hearing and remanded the case. On remand, the state trial court conducted a retrospective competency

hearing, which resulted in the determination that Kelly was previously competent to stand trial. Kelly appealed his retrospective competency determination to the Kentucky Supreme Court, but to no avail.

Kelly then attacked his conviction pursuant to RCr 11.42. His collateral motion, which raised several ineffective assistance of counsel claims, was rejected by the state trial court on October 13, 2013. The Kentucky Court of Appeals affirmed the trial court's ruling and the Kentucky Supreme Court, in its discretion, declined to review the matter. Having exhausted his state remedies, Kelly now petitions this Court for habeas relief pursuant to 28 U.S.C. § 2254.

## ANALYSIS

### A. Motions for Miscellaneous Relief

In addition to his § 2254 petition, Kelly filed several motions seeking miscellaneous relief, including a motion for an evidentiary hearing, a motion for the appointment of counsel, and a motion to expand the record or in the alternative, for the Court to take judicial notice of certain facts. The Court will now address each of these.

First, as to whether Kelly is entitled to an evidentiary hearing concerning the alleged conflicts of his trial counsel, the Magistrate determined that Kelly had "failed to establish a factual basis for a conflict of interest due to a sexual relationship between his DPA counsel and the prosecutors of his case . . . ." The Magistrate, relying on § 2254(e)(2), further observed that Kelly's conflict of interest claim does not rely on a new, retroactive rule of constitutional law or the presence of facts that could have not been discovered. Based on Kelly's failure to satisfy § 2254(e)(2), the Magistrate recommended that this Court deny his request for an evidentiary hearing.

Kelly objects to the recommendation, asserting that the Magistrate's invocation of § 2254(e)(2) was improper. According to Kelly, the Court should instead refer to the analytical

framework set forth in *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). There, the Supreme Court held that when "deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. Applying this standard, Kelly argues that he has clearly established a factual basis for the existence or an improper relationship between his trial counsel and then Assistant Commonwealth Attorney, David Smith. This is so, Kelly argues, because he has shown that Jessica Hall, his trial counsel, went to work for the Commonwealth Attorney's Office within a year of the trial and she eventually married David Smith.

The Court would like to note that the starting point for Kelly's evidentiary hearing request is neither § 2254(e)(2) nor *Schiro*. Instead, it is the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011), which held that review under § 2254(d) is limited to the record before the state court that adjudicated the claim on the merits. Put plainly, if a petitioner's claim was adjudicated on the merits at the state level, a federal court sitting in habeas may *not* consider additional evidence—whether it come through an evidentiary hearing or otherwise. *Bourne v. Curtin*, 666 F.3d 411, 415 (6th Cir. 2012) ("Because the state court considered [defendant's] ineffectiveness argument on the merits, however, [defendant] is stuck with "the record that was before the state court . . . [defendant] is not entitled to an evidentiary hearing") (internal citations omitted). The *Pinholster* Court also clarified that a federal district court should only consider whether to grant a substantive hearing using the factors enumerated in § 2254(e)(2) if the state court did *not* decide the claim under a review of the merits. *Pinholster*, 563 U.S. at 185–86 ("Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief. . . . At a minimum, therefore, §

2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court.").

In light of *Pinholster*—and the Sixth's Circuit's subsequent interpretation of it—the first question this Court must ask is whether the state court decided Kelly's conflict of interest claims on the merits. If the answer is yes, then the Court is forbidden from considering evidence that was not before the state court at the time it rendered its decision. If the answer is no, then the Court may wade into the waters of § 2254(e)(2). Upon review, the Court finds that the Kentucky Supreme Court evaluated Kelly's conflict of interest claims using the federal standard set forth in *Strickland* and therefore, addressed the claims on the merits. And because Kelly's conflict of interest claims were adjudicated on the merits, this Court is forbidden from considering evidence that the Kentucky Supreme Court did not have before it when considering the claims. An evidentiary hearing, therefore, would be pointless.

With that, the Court turns to Kelly's request for appointed counsel. In the § 2254 context, the appointment of counsel is only mandatory when an evidentiary hearing is being held. *Settle v. Lester*, No. 12-1206-JDB-EGB, 2013 WL 1966438, at *1 (W.D. Tenn. May 10, 2013). Where an evidentiary hearing is not being conducted, as is the case here, the reviewing district court has ample discretion to determine whether the "interests of justice or due process" require the appointment of counsel. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). In exercising this discretion, the district court should consider the legal and factual complexity of the case and the petitioner's ability to investigate and present his claims. *Sellers v. United States*, 316 F. Supp. 2d 516, 522 (E.D. Mich. 2004). A district court does not abuse its discretion in denying a request for court-appointed counsel where the issues can be resolved on the basis of the state court record.

Here, the Magistrate determined that Kelly failed to produce evidence that the denial of counsel would infringe upon his due process rights. He further concluded, based on the

nature of Kelly's pro se submissions to the Court, that Kelly has a "good understanding of the issues and the ability to forcefully and coherently present his contentions." [DE 26, at 40] (citing *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987)). Accordingly, the Magistrate recommended that the Court deny Kelly's request for appointed counsel. Kelly has objected to the Magistrate's findings, but he does not make any arguments for why counsel is necessary in the absence of an evidentiary hearing. Rather, it appears his only argument is that the appointment of counsel is necessary here because an evidentiary hearing is also required. Upon consideration of the Magistrate's R&R and Kelly's contentions, the Court **denies** Kelly's request for appointed counsel.

Lastly, Kelly asks the Court to expand the record to include his objection to the appointment of DPA counsel during his state collateral proceeding. [DE 21.] For reasons unknown, this submission was left out of the state court record. [DE 21.] Kelly asserts that this objection is pivotal because attached to it is a complaint showing that his trial counsel, Jessica Hall, now goes by "Jessica Hall Smith." [DE 21.] Kelly contends that this document firmly establishes that Jessica Hall married then Assistant Commonwealth Attorney David Smith sometime before 2010.

In the alternative, Kelly requests that the Court take judicial notice of the fact that Jessica Hall and David Smith were married in September of 2008. In support of his request, Kelly attached a marriage license showing that the two were indeed married. [DE 24-1.] Kelly maintains that the mere fact of this marriage is dispositive of his conflict of interest claim. Kelly argues that because Jessica Hall and David Smith were married in 2008, there must have been an illicit relationship between the two during his trial in 2004.

The Magistrate declined Kelly's invitation to expand the record or in the alternative, take judicial notice of the fact that Jessica Hall and David Smith were married in September of 2008. As to the expansion of the record, the Magistrate correctly observed that Rule 7 of

the Rules Governing Section 2254 Cases provides, in relevant part, "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." Because he recommended that the petition be denied in full, the Magistrate noted that if the Court adopted this recommendation, any motion to expand the record would be denied as moot under Rule 7. [DE 26, at 37.] Nonetheless, in the event this Court did not adopt his recommendation to dismiss Kelly's § 2254 petition, the Magistrate evaluated the request for a record expansion on the merits. Upon review, the Magistrate found that the state court objection that Kelly seeks to introduce provides no basis for his claim that his Jessica Hall and then Assistant Commonwealth Attorney David Smith engaged in an improper relationship during trial. The Magistrate used this same logic when refusing to take judicial notice of the marriage between the two parties.

Kelly objects to the Magistrate's refusal to expand the record or in the alternative, take judicial notice of the marriage between Jessica Hall and David Smith in 2008. Kelly claims that the fact that Jessica Hall went to work for the Commonwealth Attorney after his trial and eventually married then Assistant Commonwealth Attorney David Smith undoubtedly shows that the two were improperly interacting during his trial. The Court, however, is unpersuaded by these arguments. The fact that Jessica Hall started working for the Commonwealth Attorney a year after Kelly's trial is not in and of itself improper. Moreover, the fact that Jessica Hall eventually married David Smith (who was not involved in Kelly's prosecution) does not lend itself to the determination that an improper relationship existed during trial. Accordingly, the Court denies Kelly's requests. And in any event, for reasons detailed below, the Court will dismiss Kelly's habeas petition, making the motion to expand the record moot. *See Wilson v. Pennsylvania Bd. of Prob. & Parole*, 939 F. Supp. 2d 512, 516 (E.D. Pa. 2013) ("Because the Court will dismiss the Habeas Petition, this motion [to expand the record] is moot.").

Having addressed Kelly's miscellaneous requests for relief, the Court will now evaluate the substance of his various § 2254 claims.

### B. Standards for Review

Prisoners may pursue federal habeas corpus relief on the ground that they are being held in contravention of the laws or treaties or Constitution of the United States. 28 U.S.C. § 2244(d)(1); *Harris v. Beckstrom*, No. CIV.A. 11-375-DLB, 2013 WL 4039802, at *11 (E.D. Ky. Aug. 7, 2013). "Federal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, the proper examination is whether the alleged errors violated the federal rights of the petitioner. *Harris*, 2013 WL 4039802, at *11.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Mack v. Holt*, 62 F. App'x 577, 579 (6th Cir. 2003).

A state court's decision is "contrary to" Supreme Court precedent if it arrives at a conclusion "opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's decision. *Morningstar v. Haney*, 625 F. Supp. 2d 434, 440 (E.D. Ky. 2008) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court's decision involves an "unreasonable application" of

clearly established Supreme Court precedent when it correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 409–10. The state court's application must have been more than incorrect. Indeed, it must have been "objectively unreasonable." *Gowans v. Crews*, No. CIV. 11-311-JMH-CJS, 2012 WL 3309398, at *3 (E.D. Ky. Aug. 13, 2012).

This highly deferential standard requires the presiding federal court to give the state court decision "the benefit of the doubt." *Slagle v. Bagey*, 457 F.3d 501, 514 (6th Cir. 2006). Petitioner must show that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 131 (2011)). The petitioner carries the burden of proof. *Booker v. Turner*, No. 3:14-CV-01025, 2017 WL 1455990, at *1 (N.D. Ohio Apr. 25, 2017).

Concerning § 2254(d)'s second prong, the factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (brackets omitted) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a petitioner files objections to the Magistrate Judge's recommended disposition, the district court must review the objections *de novo. Spencer v. Erwin*, No. CV 17-81-DLB-HAI, 2018 WL 575590, at *2 (E.D. Ky. Jan. 25, 2018). To invoke *de novo* review, however, the petitioner's objections must be specific. "[V]ague, general or conclusory objections . . . [are] tantamount to a complete failure to object." *Cole v. Yukins*, 7 Fed.Appx. 354, 356 (6th Cir.

2001). Further, "an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004) (internal quotations omitted).

## B.  Claims I Thru VII – Errors of the State Trial Court

### I.  The State Trial Court's Failure to Conduct a Competency Hearing

In his first claim for habeas relief, Kelly asserts that the state trial court violated his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process when it failed to hold a competency hearing after previously ordering a competency evaluation. After reviewing the Magistrate's R&R and Kelly's objections thereto, the Court **denies** relief on this claim.

KRS 504.100(1) requires a court to appoint a psychologist or psychiatrist "to examine, treat and report on the defendant's mental condition" whenever "the court has reasonable grounds to believe that the defendant is incompetent to stand trial." KRS 404.100(3) mandates that after the filing of a competency evaluation report, the state trial court "shall hold a hearing to determine whether or not the defendant is competent to stand trial." There is no dispute that the state trial court failed to conduct a competency hearing for Kelly—the Kentucky Supreme Court recognized as much on Kelly's initial direct appeal. The question before the Court then is whether the state court remedy, a retrospective competency hearing held over three years after his initial competency evaluation, denied Kelly of his constitutional rights.

The Magistrate found that the Kentucky Supreme Court's decision to uphold the retrospective competency determination was not an unreasonable application of Supreme Court precedent—or an unreasonable determination of the facts—and recommended that this Court deny Kelly's claim for relief. Kelly's response is twofold. First, Kelly submits that

the Supreme Court's decision in *Pate v. Robinson* stands for the proposition that a "retrospective competency hearing is not an adequate remedy to rectify the denial of a defendant's right to a competency hearing before being subjected to trial." [DE 30, at 7.] Second, Kelly argues that even if the Court finds that retrospective hearings are legitimate, it should grant relief because his retrospective competency hearing was not conducted within the proper time frame.

To begin, Kelly's interpretation of *Pate v. Robinson* is incorrect. *See* 383 U.S. 375, 377 (1966). Though *Pate* disfavors retrospective competency hearings, it by no means forbids them. The circuit courts interpreting *Pate* have made this abundantly clear. *See, e.g.*, *United States v. Duncan*, 643 F.3d 1242, 1250 (9th Cir. 2011); *Maynard v. Boone*, 468 F.3d 665, 675 (10th Cir. 2006); *Miller v. Dugger*, 838 F.2d 1530, 1544 (11th Cir. 1988); *United States v. Renfroe*, 825 F.2d 763, 767 (3d Cir. 1987). Importantly, the Sixth Circuit "recognizes that a retrospective determination may satisfy the requirements of due process provided it is based on evidence related to observations made or knowledge possessed at the time of trial." *Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995).

Having found that retrospective competency hearings are appropriate in some situations, the Court must determine whether the hearing in Kelly's particular case passes muster. Kelly is correct in noting that the state trial court conducted his hearing approximately 18 months following the Kentucky Supreme Court's remanding of the matter. The Court is also cognizant of the fact that multiple years elapsed between the initial competency evaluation ordered by the state trial court and retrospective competency hearing eventually held on remand. That said, the mere passage of time is not an "insurmountable obstacle." *See Newman v. Harrington*, 726 F.3d 921, 929 (7th Cir. 2013); *see also Cremeans*, 62 F.3d at 170 ("Although the passage of time in this case is significant, we do not find it

dispositive."). Instead, the pertinent inquiry is whether "the quality and quantity of the available evidence is such that an assessment as to the defendant's competency could be made which is more than mere speculation." *Dorris v. Com.*, 305 S.W.3d 438, 443 (Ky. Ct. App. 2010) (citing *Cremeans*, 62 F.3d at 170). There is nothing in the record which suggests that the state trial court or the Kentucky Supreme Court misapplied this standard. Moreover, there is not clear and convincing evidence that the state's factual findings regarding Kelly's competence were unreasonable. Indeed, it does not appear that Kelly is arguing that he was incompetent at the time of trial. The Court therefore adopts the Magistrate's recommendation and **denies** Kelly's first request for habeas relief.

## II. The State Trial Court's Failure to Redact Portions of Kelly's Interview

Kelly contends that the state trial court violated his constitutional rights when it allowed the jury to view certain portions of his post-arrest interview with Winchester Police Detectives. Kelly places the unredacted interview segments into two silos. First were his statements to Winchester Police Detectives admitting that he was present in the victim's apartment during the events in question. Second, the jury was shown portions of the interview where Winchester Police Detective Caudill categorized the victim's wounds as "defensive."

On direct appeal, the Kentucky Supreme Court determined that even if the statements made by Kelly and Detective Caudill were admitted in error, those errors were certainly harmless under state law given the victim's testimony and another witness's expert opinion as to the defensive nature of the victim's knife wounds. Because the Kentucky Supreme Court's decision rested on state law grounds—specifically the Kentucky Rules of Evidence and *Lanham v. Commonwealth*, 171 S.W.3d 14 (Ky. 2005)—the Magistrate determined that Kelly lacked a basis for federal habeas relief. This Court agrees. *See Robinson v. Davis*, 412 F. App'x 837, 842 (6th Cir. 2011) ("The writ of habeas corpus cannot

be granted on the grounds of erroneous application of state law."); *Petrey v. Bottom*, No. 2:16-CV-72-GFVT-REW, 2016 WL 11371445, at *14 (E.D. Ky. Dec. 27, 2016) ("[A]ny argument that the trial court incorrectly applied the Kentucky Rules of Evidence is not proper § 2254 material . . . ."). Accordingly, the Court **denies** Kelly's second claim for habeas relief.

### III. Violation of Kelly's Right to Be Presumed Innocent

Kelly next challenges the state trial court's decision to deny his motion for a mistrial after Detective Caudill gave testimony in which he "gratuitously informed" the jury that Kelly was incarcerated prior to trial. Kelly asserts that the error was a violation of his Fifth Amendment right to be presumed innocent. The Kentucky Supreme Court found on direct appeal that while Detective Caudill's testimony was improper, it was a *de minimis* violation of Kelly's right to be presumed innocent. *Kelly*, 2006 WL 3386636, at *6. The Kentucky Supreme Court further determined that any prejudicial effect of the violation was remedied by later jury instructions concerning reasonable doubt and the presumption of evidence. *Id.*

Using the framework set forth § 2254(d), the Magistrate determined that the Kentucky Supreme Court's decision on the matter was not an unreasonable application of federal law and recommended that Kelly's claim be denied. Kelly objects to the Magistrate's recommendation, arguing that "once the bell is rung you can't take back its ring." In other words, Kelly asserts that the later instructions given to the jury could not cure Detective Caudill's improper testimony. Kelly also faults the Kentucky Supreme for failing to use the federal standard for harmless error under set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967). [DE 30, at 22.] Specifically, *Chapman* requires a finding that that the "error was harmless beyond a reasonable doubt."

It is unclear if the Kentucky Supreme Court employed the proper *Chapman* test when reviewing Kelly's Fifth Amendment claim for harmless error. Whether or not it did so,

however, has no bearing on this Court's analysis. The Sixth Circuit, relying on Supreme Court precedent, has made clear that a federal court sitting in habeas is to apply the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson* when reviewing a state court's determination of harmless error. This is true regardless of whether the state court previously reviewed the alleged error under *Chapman*. *Peterson v. Warren*, 311 F. App'x 798, 804 (6th Cir. 2009) ("[A] federal court sitting in habeas "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the substantial and injurious effect standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the . . . standard set forth in *Chapman*."); *Simmons v. Moore*, No. 1:14-CV-02413, 2016 WL 5417827, at *9 (N.D. Ohio July 22, 2016), *report and recommendation adopted*, No. 1:14 CV 2413, 2016 WL 5405241 (N.D. Ohio Sept. 28, 2016) ("[A] prisoner who seeks federal habeas relief must satisfy *Brecht*, and if the state court made a harmless error determination under *Chapman*, then the *Brecht* test subsumes the limitations imposed by AEDPA."). In determining the effect of an error under *Brecht*, the federal habeas court must "consider both the impact of the improperly admitted evidence and the overall weight of the evidence presented at trial." *Peterson*, 311 F. App'x at 805.

This Court concludes, based on the other evidence of Kelly's guilt and the jury instructions given on presumption of innocence and reasonable doubt, that the mention of Kelly's incarceration prior to trial was harmless error in that it did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Consequently, Kelly's third claim for habeas relief is hereby **denied**.

## IV.    Improper Instruction on First-Degree Sexual Abuse

In his fourth claim for habeas relief, Kelly asserts that the state trial court improperly instructed the jury on first-degree sexual abuse in contravention of his constitutional rights. In particular, Kelly submits that the instruction was inappropriate because the prosecution failed to produce evidence that he had any sexual contact with the victim, K.C.

The Kentucky Supreme Court addressed this claim on direct appeal. Citing *Bills v. Commonwealth*, 851 S.W.2d 466, 471 (Ky. 1993), it determined that while the Kentucky statute for first-degree sexual abuse requires "sexual contact," the contact does not necessarily have to be between the perpetrator and the victim. The Kentucky Supreme Court went on to conclude that even though "there was no physical contact between [Kelly and the victim], the facts proven satisfy the definition of 'sexual contact' under the statue." *Kelly*, 2006 WL 3386636, at *7.

The Magistrate recommended that this Court deny Kelly's claim for relief because the Kentucky Supreme Court's decision rested on an interpretation of state statute independent of any federal question. Kelly objects to this recommendation apparently on the ground that because the Kentucky Supreme Court's interpretation of KRS 510.110 was so egregiously wrong, his Sixth and Fourteenth Amendment Rights are implicated. This argument, however, is wholly unpersuasive. When a state court interprets its own state statute, a federal court sitting in habeas cannot find that the state court's interpretation is incorrect and in contravention of the Constitution. Accordingly, the Court refuses to interpret KRS 510.110 differently than the Kentucky Supreme Court and it adopts the Magistrate's recommendation. *See Hack v. Elo*, 38 F. App'x 189, 192 (6th Cir. 2002); *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir. 1988). Kelly's fourth claim for habeas relief is **denied** accordingly.

## V.     Failure to Prove the Elements of the Persistent Felony Offender Charge

Kelly contends that he was denied his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process when he was sentenced as a persistent felony offender, despite the fact that the state never proved that he was over the age of eighteen when the previous crimes occurred. On appeal, the Kentucky Supreme Court observed that since the issue was not properly preserved, it was subject to the palpable error standard. *Kelly*, 2006 WL 3386636, at *8. Therefore, in order to succeed on the claim, Kelly would have to show that the state trial court's error resulted in "manifest injustice." *Id.*

The Kentucky Supreme Court, citing to *Martin v. Commonwealth,* 13 S.W.3d 232 (Ky. 1999), found that direct proof of a persistent felony offender element was not required when there was evidence from which a jury could infer the existence of that element. Applying that standard, the Kentucky Supreme Court determined that there was enough evidence supporting the inference that Kelly's prior crimes occurred after he had reached the age of eighteen. *Id.* First, the Kentucky Supreme Court noted that Kelly's parole officer testified that Kelly's date of birth was April 23, 1951, meaning that he turned eighteen in 1969. Second, the Supreme Court observed that since each of the prior felony acts were prosecuted under the Kentucky Penal Code, it could safely be determined that the acts were prosecuted after January 1, 1975, the Code's effective date. *Id.* at *9. Because of this evidence, the Kentucky Supreme Court refused to find "that the error in the Commonwealth's failure to prove the specific dates of Appellant's crimes caused a manifest injustice." *Id.* at 9.

Given that the Kentucky Supreme Court reached its decisions under Kentucky's palpable error rule, the Magistrate determined that federal habeas relief was unavailable and recommended that this Court deny the claim. Kelly objects, arguing that review for palpable error is substantive, not procedural. Kelly further contends that the Kentucky Supreme Court's decision rests on an "unreasonable determination of the facts in light of the

evidence presented to the state court proceedings pursuant to 28 USC 2254(d)(2)." [DE 30, at 33.]

Under Sixth Circuit precedent, a state appellate court's review for plain error (i.e. palpable error) is treated as the enforcement of a procedural default for habeas purposes. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Bailey v. White*, No. 515CV00152GNSLLK, 2015 WL 13375684, at *7 (W.D. Ky. Dec. 9, 2015), *report and recommendation adopted in part*, No. 515CV00152GNSLLK, 2017 WL 2385352 (W.D. Ky. June 1, 2017). Therefore, Kelly has waived the right to habeas review unless he can "demonstrate cause for not complying with the state procedural rule and actual prejudice arising from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice." *Williams v. E. Kentucky Corr. Complex*, No. CIV.A. 5:09-388-KKC, 2011 WL 3475087, at *2 (E.D. Ky. Aug. 9, 2011). Kelly does not present any objection to the Magistrate's determination that he failed to establish cause and prejudice or miscarriage of justice. Accordingly, the Court adopts the Magistrate's conclusion and **denies** Kelly's claim for relief.

## VI.     Improper Instruction on First-Degree Assault

Pursuant to KRS 508.010, a defendant is guilty of first-degree assault when: "(1) he intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or (2) under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person." During Kelly's trial, rather than putting the issue to the jury, the state trial court decided as a matter of law that a knife was a deadly weapon or dangerous weapon under KRS 508.010. Kelly argues that this error was a violation of his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Upon review of Kelly's *Apprendi* claim, the Kentucky Supreme Court found that the instructions submitted to the jury were indeed in error. *Kelly*, 2006 WL 3386636, at *11. The Kentucky Supreme Court went on to find, however, that the error was harmless pursuant to RCr 9.24. *Id*. Specifically, the Kentucky Supreme Court observed that "[g]iven the circumstances of this case . . . there can be little doubt that had the jury been presented with a proper jury instruction it would have concluded that the knife was a 'dangerous instrument' and convicted Appellant of first-degree assault." *Id*.

The Magistrate has recommended that this Court reject Kelly's claim for relief under *Apprendi* on the basis that the Kentucky Supreme Court's harmless error determination was not an "erroneous, incorrect, or unreasonable application of federal law." Kelly objects, noting that the Court must review the Kentucky Supreme Court's harmless error under *Brecht* and determine whether the *Apprendi* error a substantial and injurious effect or influence in determining the jury's verdict. Though Kelly is correct about the test, he is mistaken about the eventual outcome.

This Court concludes that the instruction error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Peterson v. Warren*, 311 F. App'x 798, 805 (6th Cir. 2009). Given the nature of the victim's wounds, the Court is confident that the jury would have determined beyond a reasonable doubt that a knife was a deadly weapon or dangerous instrument under the relevant statute. *See Remijio v. Hedgpeth*, No. CV 07-05414R(SS), 2008 WL 4822862, at *8 (C.D. Cal. Nov. 3, 2008) ("An *Apprendi* violation is harmless if a jury would have found the relevant aggravating factors beyond a reasonable doubt."). Accordingly, the Court adopts the reasoning of the magistrate and **denies** Kelly habeas relief on this claim.

**VII. Failure to Grant Directed Verdict on First-Degree Assault Charge**

Kelly next faults the state trial court for denying his motion for a directed verdict for the first-degree assault offense. Kelly contends that the victim, K.C., was incompetent to testify under Kentucky Rule of Evidence 601(b) because her testimony was "varying and unreliable." And, if the victim's testimony was properly excluded, Kelly submits that no reasonable jury would have convicted him on the first-degree assault charge.

On appeal, the Kentucky Supreme Court found that the victim was not the "sort of witness contemplated" under KRE 601(b) making Kelly's argument futile. *Kelly*, 2006 WL 3386636, at *11. It further concluded that even without the victim's testimony, there was sufficient evidence for the jury to convict Kelly of first-degree assault. *Id.* This evidence included the victim's blood that was found at the scene and on several articles of Kelly's clothing, the testimony of several eyewitnesses, and the fact that Kelly admitted to police that he was in the victim's apartment when the events in question unfolded. *Id.*

The Magistrate decided that "given the recitation of the facts in the Kentucky Supreme Court's Opinion, a rational fact finder could have found Kelly guilty beyond a reasonable doubt with or without the victim's testimony." [DE 26, at 22.] Thus, the Magistrate recommended that the claim be denied. Kelly's objection appears to be that in considering whether there was sufficient evidence to convict absent the victim's testimony, the Magistrate considered Kelly's admission that he was in the victim's apartment during the events in question. Kelly claims that because these statements were admitted in error it was improper for the Magistrate to consider them when assessing the sufficiency of the evidence.

The Kentucky Supreme Court's determination that KRE 601(b) did not apply to the victim witness is not a matter that this Court can review. *Castorena v. Brewer*, No. 18-1854, 2018 WL 7132239, at *2 (6th Cir. Dec. 28, 2018) ("Claims concerning a trial court's alleged

violation of the state rules of evidence are not cognizable in § 2254 proceedings."). Were that not enough, the Court finds *arguendo* that there was sufficient evidence to convict Kelly even without the testimony of the victim. The Court would also note that it was not improper for the Kentucky Supreme Court or the Magistrate to consider Kelly's statements about being in the victim's apartment when evaluating the sufficiency of the evidence. As noted *supra*, the admission of this evidence was harmless under Kentucky law.

### C. Claims VIII Thru XIV Ineffective Assistance of Counsel

Following an unsuccessful appeal, Kelly filed a pro se motion to vacate his sentence pursuant to Kentucky RCr 11.42, alleging various instances of ineffective assistance of counsel. The state trial court denied all of Kelly's collateral claims and the Kentucky Court of Appeals affirmed. The Kentucky Supreme Court declined the invitation to review. Thus, having exhausted his state remedies, Kelly now asserts the same *Strickland* claims via his § 2254 habeas petition. *Strickland* requires a two-step analysis. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, a petitioner must demonstrate that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 688. Second, a petitioner must show that he was prejudiced by counsel's deficient performance. *Id.* at 670. The reviewing court may reject the claims upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.

As to the performance prong, courts generally maintain a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688. To show that his counsel's performance was objectively unreasonable, a petitioner must rebut the strong presumption that the challenged conduct could be considered sound trial strategy under the circumstances. *Id.* A reasonable tactical decision by counsel with which the defendant disagrees cannot form a basis for an ineffective assistance of counsel claim.

*Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984). The reviewing court does not consider whether another lawyer with the benefit of hindsight would have acted differently than petitioner's trial counsel. *Strickland*, 466 U.S. at 689. Rather, the court looks only to whether trial counsel made errors so serious that counsel failed to function as guaranteed by the Sixth Amendment. *Id.* at 687.

If a petitioner can show that his counsel's performance was unreasonable, the reviewing court must then determine whether prejudice resulted from the counsel's deficient performance. *Id.* at 694. A petitioner can prove prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" does not require a petitioner to show by a preponderance of the evidence that the jury would have returned a more favorable verdict. Instead, the Supreme Court defines "a reasonable probability" as a "probability sufficient to undermine confidence in the verdict." *Id.*

## VIII. Alleged Conflict of Interest

In his eighth claim for habeas relief, Kelly asserts that his trial counsel was operating under multiple conflicts of interest in violation of *Strickland*. For one, Kelly submits that his counsel had a conflict of interest during his trial because shortly thereafter, she went to go work for the Commonwealth Attorney's Office in Winchester. Kelly is assuming here, without any proof, that his trial counsel was discussing her potential employment as a state prosecutor with the other side during trial, creating a "distinct divided loyalty" in the process. [DE 30, at 55.] Kelly also maintains that his trial counsel was romantically involved with an Assistant Commonwealth Attorney at or around the time of trial. As evidence of the improper relationship, Kelly asserts that his trial counsel, Jessica Hall, and then Assistant Commonwealth Attorney, David Smith, were eventually married in 2008. To the Court's knowledge, Kelly has not put forth any evidence that the two were communicating or

engaging in a romantic relationship *during* his trial. Rather, Kelly's contention appears to be that since the two are married now, they must have been romantically involved during his trial in 2004. The state trial court and the Kentucky Court of Appeals both rejected these arguments.

The Magistrate determined that the record is void of any facts or details supporting Kelly's conflict of interest claims and therefore, the presumption of reasonable performance under *Strickland* had not been overcome. [DE 26, at 26.] Kelly objects, arguing that his conflict of interest claims are governed by *Cuyler v. Sullivan*, 446 U.S. 335 (1980)—which creates a presumption of prejudice—not *Strickland*.

Kelly's invocation of *Cuyler* is misplaced. In *Mickens v. Taylor*, 535 U.S. 162 (2002), the Supreme Court held that the presumed prejudice standard of *Cuyler* was only clearly established in the situation of a conflict of interest due to multiple concurrent representation. The Sixth Circuit has echoed this point. *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir., 2006) ("The Sixth Circuit "has consistently held that, for § 2254 cases, the [*Cuyler*] standard does not apply to claims of conflict of interest other than multiple concurrent representation . . . ."). Because Kelly's conflict of interest claims do not involve multiple concurrent representation, he does not get the benefit of presumed prejudice under *Cuyler*. Instead, his conflict of interest claims are subject to the ordinary *Strickland* analysis.

With this in mind, the Court wholeheartedly agrees with the Magistrate and finds that the Kentucky Court of Appeals' decision was not contrary to or an unreasonable application of federal law—i.e. *Strickland*. As observed by the Magistrate, Kelly has not submitted any proof for his conflict of interest claims. Instead, he provides mere speculation. Accordingly, the Court **denies** Kelly's *Strickland* claim based on an improper conflict of interest.

## IX.  Failure to Properly Investigate the Victim's State of Mind

Next, Kelly argues that his trial counsel was constitutionally ineffective for failing to obtain (1) the victim's psychiatric records, and (2) a forensic psychiatrist to testify that the victim's injuries were self-inflicted and the likely result of a condition known as "cocaine associated excited delirium." Had counsel properly explored these avenues, Kelly maintains that the jury would have adopted his version of the events and exonerated him.

The state trial court and the Kentucky Court of Appeals have already rejected this line of argument, observing that to this date cocaine associated excited delirium is an unproven theory and therefore, counsel's failure to raise the issue was not synonymous with deficient performance. In the alternative, the Kentucky Court of Appeals found that even if counsel's performance were somehow deficient, Kelly's defense was not prejudiced thereby. This was because the other evidence against Kelly was "significant." *Kelly v. Com.*, No. 2014-CA-000124-MR, 2016 WL 1558769, at *4 (Ky. Ct. App. Apr. 15, 2016).

The Magistrate found that the Kentucky Court of Appeals' decision was not contrary to or an unreasonable application of *Strickland*. Despite Kelly's objections, this Court agrees with the Magistrate. Given the controversial nature of the purported theory and the uncertainty as to its admissibility, it was reasonable for defense counsel not to pursue the strategy. And, even if trial counsel was somehow deficient for not raising the theory, the Court determines that the Kentucky Court of Appeal's application of *Strickland*'s prejudice prong in its alternative analysis was also not unreasonable. Thus, the Court **denies** Kelly relief on this claim.

## X.  Failure to Obtain a Blood Splatter Specialist

According to Kelly, the testimony of a blood splatter expert would have significantly undermined the state's case against him. Kelly argues that the hypothetical expert would have been able to adequately convey to the jury that, unlike Kelly who had minimal amounts

of blood on his person and clothing, the victim's true assailant would have been doused in the victim's blood. Kelly claims that his counsel's failure to obtain such an expert was a gross violation of *Strickland*. Upon review of his state collateral motion, the Kentucky Court of Appeals noted that even though Kelly did not put on a blood splatter expert as a witness, the issue of the blood splatter was addressed during his trial and therefore, the jury was able to adequately contemplate the theory. Kelly, 2016 WL 1558769, at *5.

The Magistrate found that the Kentucky Court of Appeals' decision regarding the failure to obtain a blood splatter specialist was not an unreasonable application of *Strickland*. This Court is persuaded by the Magistrate's well-reasoned analysis. Even though trial counsel did not obtain a blood splatter expert, there is no dispute that the theory regarding the small amount of blood on Kelly's clothes was communicated to the jury. For that reason, Kelly fails to satisfy *Strickland*'s performance prong. And, even if the performance prong were somehow satisfied, the state court's application of *Strickland*'s prejudice requirement was also not unreasonable. Kelly has not borne his burden of showing that there is a reasonable likelihood that, but for counsel's failure present the testimony of a blood splatter expert, the state court decision would have been different. *See Hall v. Bell*, No. 2:06-CV-56, 2010 WL 908933, at *14 (E.D. Tenn. Mar. 12, 2010). For these reasons, the Court will **deny** the claim.

## XI. Failure to Submit Curing Jury Instructions

Kelly claims that his counsel violated *Strickland* by failing to object to the state trial court's persistent felony offender jury instruction. By failing to object to the instruction, the issue was not preserved, and Kelly was unable to bring it on direct appeal. The Kentucky Court of Appeals advised that even if Kelly could somehow demonstrate that his counsel was deficient in failing to object to the PFO instruction, he could not show prejudice under

*Strickland* because he was given an appropriate penalty within the limits of KRS 532.080, Kentucky's persistent felony offender statute. *Kelly*, 2016 WL 1558769, at *8.

The Magistrate concluded that the Kentucky Court of Appeals' application of *Strickland*'s prejudice prong was not unreasonable and recommended that this Court deny Kelly habeas relief on this claim. Because Kelly's 87-page submission does not squarely address the issue, the Court adopts the Magistrate's recommendation without conducting a *de novo* review.

## XII.   Failure to Obtain Character Witnesses

Kelly states that his trial counsel was constitutionally ineffective on account of her failure to obtain character witnesses on his behalf. Of note, Kelly claims that two of his former parole officers, his girlfriend at the time, and other individuals could have been called to testify that Kelly was not a violent individual. The state trial court found on collateral review that the decision was reasonable under *Strickland* because it prevented the opening of the door for evidence of prior bad acts. The Kentucky Court of Appeals affirmed the state trial court's conclusion—though hanging its hat on *Stickland*'s prejudice prong instead. *Kelly*, 2016 WL 1558769, at *3. In particular the Kentucky Court of Appeals observed that even if trial counsel had put on an abundance of character witnesses, the result of the trial would not have been any different considering the other evidence presented. *Id.*

After a thorough review, the Court adopts the Magistrate's determination that the decision reached by the Kentucky Court of Appeals was not contrary to or an unreasonable application of *Strickland*. Accordingly, Kelly's claim is **denied**.

## XIII.   Failure to Move for Disqualification of Commonwealth Attorney's Office

Kelly further claims that his trial counsel erred by not moving to disqualify the Commonwealth Attorney's Office when it called an Assistant Commonwealth Attorney Heidi

Engel to testify at Kelly's suppression hearing. Engel was one of the two Assistant Commonwealth Attorney's prosecuting Kelly's case. On collateral review, the Kentucky Court of Appeals noted that Engel only testified at the suppression hearing in order to rebut the testimony of Richie Bell. *Kelly*, 2016 WL 1558769, at *8. Apparently, Bell was making statements on the witness stand that directly contradicted what he had previously told the prosecutors and investigators. *Id.*

Upon review of Kelly's claim, the Kentucky Court of Appeals determined that even if trial counsel performed deficiently in failing to disqualify the Commonwealth Attorney's Office, Kelly cannot demonstrate that he was prejudiced as a result. *Id.* This, the Court of Appeals observed, was because Detective Caudill of the Winchester Police testified to the same effect as Assistant Commonwealth Attorney Engel. *Id.* The Magistrate, upon examination, found that the Court of Appeals' application of *Strickland*'s prejudice prong was not unreasonable. Having been sufficiently advised on the matter, this Court will adopt the well-reasoned conclusion of the Magistrate. Kelly's claim for habeas relief will be ***denied*** accordingly.

## XIV.   Cumulative Error

In his final effort, Kelly argues that the ineffectiveness of his trial counsel is demonstrated by the cumulative effect of each of the previously asserted errors. However, as noted by the Magistrate, the accumulation of non-errors cannot form the basis of a viable *Strickland* claim. *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004). Accordingly, the Court **denies** Kelly's final claim for habeas relief.

## CONCLUSION

It is HEREBY ORDERED that:

1. United States Magistrate Judge Edward B. Atkins's Recommended Disposition [DE 26] is **ADOPTED** and Petitioner Virgil Kelly objections [DE 30] are **OVERRULED**;

2. Petitioner Virgil Kelly's motion for relief under 28 U.S.C. § 2254 [DE 1] is **DENIED**;

3. Judgment shall be entered contemporaneously with this Order; and

4. A Certificate of Appealability **SHALL NOT ISSUE** with respect to the claims alleged in the petition, which have been addressed on the merits herein, because Petitioner Virgil Kelly has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c).

Dated May 21, 2019.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY